2008 VT 132

## In re Richard L. Bitter, Jr.

[969 A.2d 71]

No. 06-212

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Davenport, Supr. J., Specially Assigned**

Opinion Filed October 31, 2008

*Richard L. Bitter, Jr.*, Pro Se, Valois, New York, Petitioner-Appellant.

*William H. Sorrell*, Attorney General, and *Kate G. Duffy*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

¶ 1. **Burgess, J.** In this case, we consider whether applicant Richard L. Bitter, Jr. has demonstrated the necessary good moral character and fitness for admission to the Vermont Bar. We conclude that applicant has failed to do so and deny him admission to the bar.

¶ 2. According to Vermont's Rules of Admission to the Bar, an applicant must "possess good moral character and fitness."

V.R.A.B. § 11(a). "The purpose of requiring an applicant to possess present good moral character is to exclude from the practice of law those persons possessing character traits that are likely to result in injury to future clients, in the obstruction of the administration of justice, or in a violation of the Rules of Professional Conduct." *Id.* § 11(b)(1). In particular, the process seeks to exclude individuals who have demonstrated "dishonesty or lack of trustworthiness in carrying out responsibilities." *Id.* An applicant bears the burden of proof on this matter. *Id.* § 11(c).

¶ 3. Except as noted, the parties do not dispute the facts. Applicant was born in 1955. After high school, he started, but did not complete, a college degree. As an adult, he had various jobs and was often self-employed; for instance he ran his own construction business and worked as a used car dealer. He also had a family and raised two children on his own. When his children were grown, he went back to school and obtained a bachelor's degree. He then attended Thomas M. Cooley Law School in Lansing, Michigan, graduating in September 2001. Upon receiving his J.D., he was accepted to American University Washington College of Law in Washington, D.C., where he received an LL.M. degree in May 2002. He was subsequently accepted into the S.J.D. program at American.

¶ 4. Applicant applied for admission to the Vermont Bar in January 2005. Through the admission process, the following facts came to light regarding applicant's history. As a juvenile, applicant pled guilty to two charges of possession of a dangerous substance and to one violation-of-probation charge in New Jersey. In 1980, when he was a young adult, applicant was charged in New Jersey with possession of marijuana and given a conditional discharge. After successful completion of probation, the charge was dismissed without an adjudication of guilt.[1] In October 1988, applicant pleaded guilty to felony theft in the third degree. After he unsuccessfully sought to have his plea withdrawn, he was sentenced to five years probation and ordered to pay restitution. He paid the restitution and was discharged from probation. In 1989, in New York, applicant was charged with aggravated harassment

---

[1] For certain first offenses in New Jersey, the court may place a defendant under supervisory treatment. Upon fulfillment of the supervisory treatment, the defendant is discharged without an adjudication of guilt and the plea is not deemed a conviction, though it is included in state criminal history record files. N.J. Stat. Ann. § 2C:36A-1.

of his estranged wife. He pleaded guilty to harassment and received a conditional discharge with a suspended sentence that remained a conviction on his record. In February 1994, applicant was charged with grand larceny. Applicant pleaded guilty to a reduced charge — a disorderly person violation — and paid $900 in restitution.[2] He was also prosecuted for writing bad checks in New York in 1995 and 1996. One charge resulted in a conditional discharge. In New York, unlike New Jersey, when a defendant receives a conditional discharge, it remains a final judgment of conviction. N.Y. Penal Law § 65.05 (McKinney). Thus, applicant had three New York convictions as of his date of application to the Vermont Bar. Applicant has not had any criminal charges since.

¶ 5. Between 1992 and 2001, applicant had five civil judgments entered against him, including one case where a default judgment was entered for failure to appear. Applicant asserts that he had an attorney appear on his behalf and was not aware of the default judgment until some time after it was entered. All judgments were satisfied by 2003. In 1994, the Internal Revenue Service filed a tax lien against applicant. The lien was released in 2003.

¶ 6. In May 1999, applicant applied to Cooley Law School and was required to answer several questions about his past. The application asked whether he had "ever been convicted of, pleaded guilty or no contest or otherwise admitted responsibility to, or conceded that a prosecuting authority had sufficient evidence" to convict him of: a felony, a misdemeanor, a "[v]iolation or other offense that could have resulted in incarceration upon conviction," or a traffic offense. In addition, applicant was required to reveal if he had ever had a criminal conviction "expunged, set aside, sealed, or otherwise declared confidential . . . . unless the law of the state in which you reside or the state in which you were convicted forbids inquiries about this information." (Emphasis omitted.) In response, applicant answered "Yes" to a felony offense, revealing his 1988 guilty plea to felony theft, and attaching an explanation of the charge. Applicant also answered "Yes" to traffic offenses, indicating that he had several traffic tickets. He answered "No," however, to the questions regarding misdemeanors, violations, and other offenses. This answer was incorrect in that it failed to acknowledge applicant's outstanding convictions for harassment, disorderly conduct, and issuing a bad check.

---

[2] While applicant disputes that he pleaded guilty to this charge, he listed the guilty plea in his application to American and in his New York Bar application.

¶ 7. Applicant made two late disclosures to the law school regarding his criminal record. In October 1999, he disclosed his 1989 plea to harassment, explaining that he thought a conditional discharge was the same as a dismissal. The Associate Dean agreed that applicant should have disclosed this information in his application and placed applicant on administrative probation for his initial false answer. Then, in June 2000, applicant disclosed a juvenile conviction for possession of a controlled substance; he explained that he originally believed his juvenile record was sealed and not subject to disclosure. The school accepted his explanation. Although applicant apparently believed that he was required to disclose juvenile convictions and conditional discharges, he did not inform the school of his two other juvenile offenses, his 1980 conditional discharge for marijuana possession,[3] his 1994 guilty plea to a disorderly person violation, or the 1996 bad-check conviction. Applicant disputes that he was required to do so because he maintains that in all of these cases the charges were dismissed without an adjudication or acceptance of guilt.

¶ 8. Applicant's application to American in January 2001 again required him to disclose information about his past. In response to a question regarding whether applicant had been placed on academic or conduct probation, or subjected to any disciplinary action by his law school, applicant answered "No," without any further explanation. In answer to whether he had ever been convicted of any violation of law, applicant revealed his 1988 plea to felony theft and his 1994 plea to a disorderly person violation. He did not disclose his juvenile convictions, the marijuana conditional discharge, his 1994 misdemeanor conviction for harassment or his 1996 bad-check conviction.

¶ 9. In 2002, applicant applied for admission to the New York Bar.[4] In his application, he disclosed his juvenile convictions and all of the criminal convictions and pleas outlined *supra*, ¶ 4. He

---

[3] Applicant maintains that he was not required to disclose this plea because in New Jersey a conditional discharge does not result in an adjudication of guilt. Even assuming that applicant is correct, this is still no explanation for his lack of disclosure of his other criminal history.

[4] The Commissioner appointed by this Court to conduct a de novo hearing of applicant's case made no findings regarding applicant's New York and Vermont Bar applications, and they were not introduced as evidence at the proceeding. The applications were, however, part of the record that was before the Character and Fitness Committee and formed part of the basis for the Committee's conclusion that applicant lacked good moral character. Because our review is of the entire

also disclosed his administrative probation at Cooley. Although applicant passed the New York Bar Examination, the New York Character and Fitness Committee found that he failed to qualify based on his "criminal record, lengthy delay in satisfying a judgment, and lack of candor on his law school applications."

¶ 10. Three years later, in January 2005, applicant submitted an application to the Vermont Bar. In answer to whether he had been "arrested for, charged with, or convicted of a civil or criminal violation," applicant disclosed his three juvenile convictions and listed all of the adult offenses outlined *supra*, ¶ 4. In his description of his criminal history, however, applicant explained that the 1994 grand-larceny charge was dismissed, not that he pled guilty to a disorderly person violation. The application also directed applicant to "[s]tate every application made by you for admission to the Bar" and to "[l]ist the jurisdiction, disposition, date of admission, and current standing to any Bar." (Emphasis omitted.) In answer, applicant wrote "New York — passed July 01 exam — Not Admitted." In addition, applicant answered "No" to the following question: "Have you been disbarred, suspended, reprimanded, censured or otherwise disciplined . . . as a student . . . ?" Despite having previously disclosed his administrative probation in answer to a substantially similar question on the New York Bar application,[5] applicant did not mention his administrative probation from Cooley on the Vermont form. At the end of the Vermont application, he certified that he had "answered all questions fully and frankly."

¶ 11. Following an investigation and hearing, at which applicant presented the testimony of two witnesses, the Character and Fitness Committee declined to certify applicant's moral character.

---

record, we consider this evidence in our decision. See *In re Monaghan*, 126 Vt. 53, 57, 222 A.2d 665, 669 (1966) (explaining that Board of Bar Examiners is an arm of this Court and this Court is not bound by Commissioner's findings).

[5] The question on the New York application reads, "Have you ever been placed on probation, dropped, suspended, expelled or otherwise been subjected to discipline by any institution of learning above elementary school level for conduct unrelated to your academic achievement?" Applicant answered, "Yes," and further explained, "At Thomas M. Cooley Law School I was placed on administrative probation upon my acceptance, in Aug. of 1999. This is due to the disclosures made on my application. This continued through my entire tenure at the school and was not based on my behavior there." We note that this answer is not entirely accurate in that applicant's probation came as a result of his *non*disclosure, rather than disclosure, of his prior convictions.

In a letter to applicant, the Committee explained its reasons as follows:

> [T]here appears to be a pattern of mismanagement of personal funds in your adult life that raises a concern about financial responsibility to future clients. You also appeared unwilling to take responsibility for your actions in those matters as well as the civil and criminal matters you have been involved in over the years. Also troubling was your lack of candor on your application for admission with regard to your denial for admission to the Bar in New York and discipline as a student in law school.

Applicant appealed the decision, and we assigned a Commissioner to conduct a de novo hearing. See V.R.A.B. § 11(j) (outlining procedure). At the hearing before the Commissioner, applicant testified and presented the testimony of several character witnesses. Two Vermont attorneys, for whom applicant had worked, testified that applicant exhibited good moral character. In addition, an Orthodox priest from Vermont testified for applicant, stating his opinion that applicant is sincere and trustworthy. Finally, a New York attorney, whom applicant has known for many years on a personal and professional basis, testified and expressed his belief that applicant is of sound moral character. The attorney, who is from applicant's home town in New York, also testified that applicant has a good reputation in their community.

¶ 12. Applicant testified on his own behalf. Applicant offered explanations for many of his legal troubles. In many cases, applicant blamed criminal convictions and civil judgments on circumstances beyond his control or a failure of the legal system.

¶ 13. Regarding his lack of candor on his law school applications, he maintained that he never had any intent to be deceitful and explained that once he became aware that he had a duty to disclose items, he did so immediately. Applicant explained that he thought his juvenile record was sealed and not subject to disclosure on his J.D. application. Further, he asserted that he disclosed his convictions after he learned that he was required to provide the law school with that information. Upon questioning, applicant was unclear about whether he had forgotten about his juvenile convictions or simply thought that he was not required to disclose them. He also did not provide an explanation for why he made a late disclosure of one juvenile infraction, but not of the others.

Applicant admitted that he realized he was required to disclose a conditional discharge and therefore disclosed his harassment conviction, but maintained that the bad-check conviction was not required to be disclosed because he remembered that the matter was dismissed, even though the paperwork revealed otherwise.

¶ 14. Concerning his LL.M. application, applicant testified that an employee at American advised him that he was not required to disclose his juvenile convictions. He also opined that he was not required to reveal his administrative probation at Cooley because the question asked only about academic and conduct probation. Applicant sought to admit a recent letter from a dean at the law school, indicating that the school would not have required disclosure of administrative probation or juvenile convictions, but the Commissioner excluded the letter as hearsay.

¶ 15. Before the Commissioner, applicant contended that he had changed since his earlier criminal and financial problems, highlighting the many years since his last criminal conviction. Applicant emphasized that all judgments against him were satisfied, that his bills were current, and that he was maintaining a good credit rating. He opined that he learned a lot in law school, and presently has the necessary good moral character to be admitted to the Vermont Bar. Overall, applicant acknowledged his past troubles, but maintained that such problems were overcome and that he is now a person of high moral character.

¶ 16. The Commissioner issued a written order with detailed findings, and recommended that applicant not be admitted to the bar because he failed to demonstrate good moral character. The Commissioner found that applicant exercised poor financial oversight, citing the several civil judgments against him, applicant's delinquencies in fulfilling judgments, the default judgment against him, and applicant's $220,000 student loan debt. The Commissioner was most concerned, however, with applicant's "evasive and false answers to the law school applications" because they were the most recent expression of applicant's character. The Commissioner concluded that applicant "demonstrated a longstanding disregard for legal process, the requirements of honesty, and the legitimate needs of others which is inconsistent with the sense of responsibility a member of the legal profession is expected to embody." The Commissioner further found that the testimony from applicant's witnesses did not override this conclusion. The Commissioner explained that he found applicant's Vermont wit-

nesses to be credible, but gave the testimony little weight because the witnesses did not have a full account of applicant's history, and because all of their information about applicant was supplied by applicant. As to the New York attorney, the Commissioner depreciated his reputation testimony due to that witness' long personal association and familiarity with applicant.

¶ 17. Applicant now appeals the Commissioner's ruling, contending that the Commissioner's findings were erroneous, the Commissioner considered irrelevant conduct, the Commissioner erroneously discounted the testimony of applicant's witnesses, and that any misdeeds are remote in time and therefore not relevant to applicant's present moral character.

¶ 18. We first examine the proper standard of review for this decision. The Rules explain that in reviewing the Commissioner's findings and conclusions, this Court "may take any action consistent with its constitutional authority." V.R.A.B. § 11(*l*)(2). As we have explained, the Commissioner is an agent of the Court appointed "to investigate the subject matter." *In re Monaghan,* 126 Vt. at 57, 222 A.2d at 669. "The facts reported by the commissioner do not have the same standing as findings of fact made by a master or auditor. It is the responsibility of this court to take appropriate action on those facts we find are supported by competent and material evidence and then arrive at a decision." *Id.* Thus, although we are aided by the Commissioner's findings, we are not bound by them, and, ultimately, it is this Court that "must be convinced of the applicant's good moral character and fitness." *Id.*

¶ 19. On review of the record, we agree with the Commissioner that applicant failed to demonstrate that he possesses the necessary moral character to be admitted to the Vermont Bar, although for somewhat different reasons. While the Commissioner based his decision in part on applicant's past legal troubles — both civil and criminal — and his financial difficulties, these past infractions and fiscal woes, by themselves, do not necessarily preclude applicant's claimed current good moral character.[6] Appli-

---

[6] We agree with applicant that the Commissioner's concerns about his status as a judgment debtor behind on his bills in the past are not particularly insightful as to applicant's present moral character. The Rules explain that traits relevant to the admission process "must have a rational connection with the applicant's present fitness or capacity to practice law and accordingly must relate to the state's

cant's last criminal charge was over ten years ago, and his civil judgments have been resolved for almost five years. We credit applicant for a "decided improvement in his conduct and behavior" during the extended period since his last criminal misconduct. *In re Monaghan*, 126 Vt. at 65, 222 A.2d at 675.

¶ 20. While we agree with applicant that it is his present character that is at issue and that his criminal past is remote in time, his more recent expressions of character and trustworthiness give us pause. We are most concerned about applicant's evident lack of candor. We agree with the Commissioner that applicant's incomplete and evasive answers to questions on the Cooley and American applications demonstrate a pattern short of complete honesty. This lack of forthrightness is further borne out in applicant's answers on his Vermont Bar application. Although willing to accept applicant's rehabilitation since his past criminal infractions, we cannot ignore applicant's seemingly chronic inability to honestly and completely answer questions about his past. Perhaps in isolation each of applicant's incomplete answers or failures to disclose would not raise alarms, but his repeated nondisclosure reveals a pattern of behavior that is particularly troubling, as demonstrated in several distinct examples outlined below.

¶ 21. First, we conclude, like the Commissioner, that applicant's answers on his law school applications were incomplete and lacking in candor. It is understandable that applicant may not have initially realized that his juvenile record and conditional

---

legitimate interests in protecting prospective clients and the system of justice." V.R.A.B. § 11(b)(1). The Commissioner questioned applicant's judgment in personal and financial matters reflected in the commingling of business and personal funds, a large student loan debt, and several civil judgments, including a default, against applicant, most of which were not satisfied for more than two years after judgment. Fiscal mismanagement can be relevant to fitness, but in this case we find the Commissioner's misgivings less than compelling, given the absence of legal violations and applicant's resolution of his fiscal affairs. The Commissioner also faulted applicant for refusing to participate in his own divorce proceeding. While arguably unwise, absent prejudice to the other party, we find no relevance in applicant's boycott of the family court to his current character and fitness. Cf. *In re Monaghan*, 126 Vt. at 61, 222 A.2d at 672 (concluding that evidence about applicant's loyalty as an employee was not relevant to applicant's moral character and integrity).

discharges were subject to disclosure on his Cooley application,[7] but there is no explanation for applicant's failure to completely disclose these infractions after he discovered that he did have a responsibility to do so. As the Commissioner explained, "[applicant's] current attempts to explain his original failure to disclose the conditional discharges and juvenile matters do not address his failure to make full disclosure of these matters in his follow up letters." Once he realized that he had an obligation to reveal these matters, we must assume that applicant made a conscious decision to continue concealing parts of his record. His explanations otherwise are not convincing.

¶ 22. Similarly, upon applying later to the LL.M. program at American, applicant again failed to disclose his entire criminal history and his prior academic probation. While applicant argues that he was not obligated to list his juvenile record or his academic probation, we are not persuaded by his excuses. Having been chastened once for nondisclosure, prudence would reasonably dictate that applicant would err on the side of full disclosure, rather than parceling out information according to his own technical interpretation of the question being asked. Furthermore, even assuming that he was not required to disclose his juvenile record or his probation status at Cooley, applicant's excuses do not provide any rational explanation for omitting his harassment and bad-check convictions.

¶ 23. Second, even after applicant encountered problems resulting from his lack of candor on his law school applications, he continued to be less than forthright in his application to the Vermont Bar. As explained above, the Vermont application specifically asked applicant to list any prior jurisdiction where he had applied for admission, the disposition, and his current standing in that jurisdiction. Applicant replied that he had applied to New York, but indicated only that he was "Not Admitted," omitting what we consider a critical distinction: that he was *denied admission* for lack of character and fitness. This answer was misleading. It was only after investigation that the Vermont Character and Fitness Committee learned the relevant information.

---

[7] This is not to condone applicant's failure to initially disclose these items, especially in light of the specific instructions on the application to fully investigate matters before answering the questions.

¶ 24. In a similar vein, we find applicant's negative answer to the question of whether he had ever been "reprimanded, censured or otherwise disciplined" as a student to be inaccurate. Applicant should have disclosed his administrative probation at Cooley in answer to this question. Although applicant can argue for a different interpretation of the question, we conclude that his administrative probation — evidently imposed as a sanction for his failure to disclose his entire criminal history — plainly falls within the category of being "otherwise disciplined." It is disturbing, at the least, that applicant felt obligated to answer this question affirmatively on his New York application, and yet remained silent on his Vermont application.

¶ 25. Finally, applicant's recitation of his criminal history on his Vermont Bar application follows applicant's pattern of evasiveness. On his Vermont application, applicant explained that the charge of grand larceny from 1994 was dismissed as a civil matter. In contrast, on his earlier New York bar application and American application, applicant explained that he pleaded guilty to a disorderly person violation and paid restitution of $900. Although this may appear to be a minor difference, it is yet another example of applicant's ongoing custom of making partial or incomplete disclosures.

■ ¶ 26. Overall, while some of applicant's answers may have, in some quibbling sense, been correct, they were certainly not complete, nor were they in keeping with his affirmation at the end of the application that he had answered all questions "fully and frankly." What applicant fails to comprehend is that in answering questions about his past, the best response is the one that most fully answers the question. Evasive or incomplete answers, although arguably not incorrect, do not fulfill an applicant's responsibility to be truthful and honest. Nor do such answers give us confidence in the applicant's ability to be honest and trustworthy in the practice of law. See V.R.A.B. § 11(b)(1) (stating that process of screening applicants for good moral character is to exclude individuals who have demonstrated "dishonesty or lack of trustworthiness in carrying out responsibilities"). Each of these instances of nondisclosure individually might not compel us to conclude that applicant lacks good moral character. In the aggregate, however, applicant's repeated nondisclosure of his past, and his continuing insistence that he has acted properly, do not give us confidence that applicant understands the importance of hon-

esty or the gravity of his behavior. Cf. *In re G.L.S.*, 439 A.2d 1107, 1117 (Md. 1982) (holding that the applicant had present moral character and fitness to be admitted to the bar, despite a serious criminal conviction and lack of complete information on his bar application because the crime occurred fourteen years previously and the applicant conceded that the information was incomplete and voluntarily provided the requisite information).

¶ 27. "False, misleading or evasive answers to bar application questionnaires may be grounds for a finding of lack of requisite character and fitness." *In re Beasley*, 252 S.E.2d 615, 617 (Ga. 1979) (per curiam) (citing cases); see also *In re Johnson*, 384 S.E.2d 668, 670 (Ga. 1989) (per curiam) (holding that the applicant's failure to disclose requested facts supported decision that the applicant lacked the necessary character and fitness for admission); *In re Antonini*, 726 N.W.2d 151, 157 (Neb. 2007) ("[L]ack of candor in completing applications to the bar may constitute a ground for a finding of lack of requisite character and fitness."). Because truthfulness is one of the most important character traits for a member of the bar to have, see V.R.A.B. § 11(b)(1), and applicant has not met his burden in demonstrating that he is honest and trustworthy, we conclude that applicant lacks the necessary moral character to be admitted to the Bar in Vermont.

¶ 28. On a final note, we address applicant's argument that the Commissioner erred in discounting the testimony of his character witnesses. We do not doubt the credibility of applicant's character witnesses, but conclude that their testimony is not sufficient to overcome applicant's demonstrated lack of candor. See *In re B.H.A.*, 626 So. 2d 683, 684 (Fla. 1993) (per curiam) (holding that the testimony of applicant's character witnesses was "insufficient to overcome the seriousness of [the applicant's] lack of veracity and candor especially in light of the fact that [the applicant] falsified his Bar application as late as 1991").

*Applicant's request for admission to the Vermont Bar is denied.*