2014 VT 28

## In re John A. Hirsch

[95 A.3d 412]

No. 12-107.

Present: Reiber, C.J., Dooley and Skoglund, JJ., and Morris (Ret.) and Zimmerman (Ret.), Supr. JJ., Specially Assigned

Opinion Filed March 28, 2014

---

*John A. Hirsch*, Pro Se, Columbia, Maryland, Petitioner-Appellant.

*William H. Sorrell*, Attorney General, and *Mark J. Patane*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

¶ 1. **Reiber, C.J.** Applicant John Hirsch appeals from a commissioner's report recommending that he be denied admission to the Vermont bar on the basis of a current unfitness to practice law. Applicant challenges a number of Vermont admission practices and rules as violative of the Americans with Disabilities Act (ADA) and the U.S. and Vermont Constitutions, claims that he was provided constitutionally deficient notice of the Character and Fitness Committee's reasons for the denial, and contends that the commissioner's findings and conclusions are unsupported. For the reasons set forth below, we adopt the commissioner's recommendation, and deny the application for admission to the bar.

¶ 2. The factual and procedural background may be summarized as follows. Applicant first applied for admission to the Vermont bar in 2004. The Character and Fitness Committee denied his application based on a failure to demonstrate fitness to practice law, and applicant appealed. This Court appointed a commissioner to hear applicant's appeal pursuant to former § 11(j) of the Rules of Admission to the Bar. The commissioner concurred in the Committee's decision, but recommended that applicant be allowed to reapply for admission if he met certain conditions, including twelve continuous months of active mental health treatment, compliance with treatment conditions, and achievement of insight into his illness and the need for ongoing treatment.

¶ 3. In September 2008, applicant reapplied for admission to the Vermont bar. Applicant submitted authorizations for release of his medical records and paperwork to demonstrate his compliance with the judge's conditions. After the bar admissions administrator received the National Conference of Bar Examiners (NCBE) investigation summary in March 2009, she requested updated releases and further disclosures from applicant, and gathered supplemental information from applicant's doctors and other

sources. The administrator also notified applicant several times that he had provided incomplete information on his application, and eventually closed the application. In September 2011, applicant sent updated disclosures and successfully reopened his application. The Committee received reports that applicant had been denied admission to the New Hampshire and Maryland bars on fitness grounds.

¶ 4. On February 22, 2012, the Committee sent applicant a letter denying his application, based on (1) a doctor's evaluation that concluded that applicant was not fit to practice law, (2) a 2006 incident with the police in Albany, New York, and (3) applicant's testimony at a family court judge's retention hearing in 2009.

¶ 5. Applicant appealed the Committee's decision, and this Court appointed another commissioner to conduct a de novo evidentiary hearing. The commissioner requested additional disclosures of medical records, which applicant refused to provide, although he did submit several letters from his doctors in support of his application. Following the hearing, the commissioner issued a fifteen-page written report setting forth her findings and conclusions, and ultimately recommending that applicant be denied admission for failure to demonstrate the requisite fitness to practice law. As more fully described below, the commissioner's ruling was grounded in its findings that applicant had failed to follow previously recommended treatment plans, had not fully cooperated in releasing his medical records, and most significantly — indeed, the "overwhelming issue" in the commissioner's view — had demonstrated "continuing paranoia and obsession with the corruption" of the Vermont family court, resulting in a demonstrated inability "in any forum, to focus on the issue at hand," "extremely disjointed and scattered" presentations in court, and a clear incapacity "to make proper presentations of fact and law on behalf of a client or to focus on the client's needs in or out of court." This appeal followed.

¶ 6. Applicant advances facial challenges under the ADA and the U.S. and Vermont Constitutions to the Committee's inclusion of questions on the bar application pertaining to the mental health history and status of bar applicants. In particular, applicant challenges questions 25 and 26 of the Vermont bar application, which are taken from the NCBE questionnaire, and inquire about

an applicant's mental health status and history.[*] These questions are meant to effectuate § 11(b)(2) of the Vermont Rules of Admission to the Bar, which provides: "Fitness, as used in these rules, is the assessment of health as it affects the competence of an applicant. The purpose of requiring an applicant to possess this fitness is to exclude from the practice of law any person having such an illness or condition which would prevent him or her carrying out duties to clients, courts or the profession."

¶ 7. In the proceedings below, neither the Committee nor the commissioner evaluated applicant's arguments regarding the propriety of the NCBE application questions under the ADA and the U.S. and Vermont Constitutions, noting that their task was to make factual findings and recommendations, not to analyze legal claims. We need not address these claims either, as we conclude that the record amply supports the conclusion that applicant's conduct, wholly apart from his mental health history or status, demonstrates his lack of fitness.

¶ 8. ■ As an initial matter, applicant contends that he was provided inadequate notice of the reasons for denial by the Committee. On the contrary, the record discloses that the Committee provided applicant with specific notice of the reasons for denial, including the particular documents in his file upon which the Committee relied. Moreover, the Committee provided ample opportunity for applicant to update his application and to provide documentation supporting his admission, as well as a hearing before a commissioner so that applicant could present his view of the facts. This process was adequate to comply with procedural

---

[*] These questions provide:

> 25. Within the past five years, have you been diagnosed with or have you been treated for bipolar disorder, schizophrenia, paranoia, or any other psychotic disorder?

> 26. A. Do you currently have any condition or impairment (including, but not limited to, substance abuse, alcohol abuse, or a mental, emotional, or nervous disorder or condition) which in any way currently affects, or if untreated could affect, your ability to practice law in a competent and professional manner?

> B. If your answer to Question 26(A) is yes, are the limitations caused by your mental health condition or substance abuse problem reduced or ameliorated because you receive ongoing treatment (with or without medication) or because you participate in a monitoring program?

due process and constitutional notice requirements. *In re Monaghan*, 126 Vt. 53, 56, 222 A.2d 665, 669 (1966).

¶ 9. On the merits, applicant contends the evidence was insufficient to support the commissioner's findings and conclusions, which, he contends, were motivated by discrimination against applicant due to his disability and his political beliefs. "The burden of proof of good moral character and fitness is upon the applicant" for admission to the Vermont bar. V.R.A.B. § 11(c). The purpose of the fitness requirement is to "exclude from the practice of law any person having an illness or condition which would prevent his or her carrying out duties to clients, courts or the profession." *Id.* § 11(b)(2). In our evaluation of applicant's fitness, "although we are aided by the Commissioner's findings, we are not bound by them, and, ultimately, it is this Court that must be convinced of the applicant's good moral character and fitness." *In re Bitter*, 2008 VT 132, ¶ 18, 185 Vt. 151, 969 A.2d 71 (quotation omitted).

¶ 10. In this evaluation, we recognize the need for compassion and respect towards those who suffer from mental health disabilities, the vast majority of whom are able to effectively treat their symptoms and contribute productively to society. We do not take lightly the decision to deny an applicant for unfitness. Nevertheless, we hold that applicant is unable to meet his burden of proof for admission. The record evidence amply supports the findings, which in turn support the conclusion that applicant's conduct — not his mental health history or status — demonstrates his unfitness to practice law. As outlined by the commissioner, these behaviors include: applicant's statements — made without supporting evidence — before the Vermont Judicial Retention Committee, during oral arguments before the Maryland Court of Appeals, and before the commissioner in this case regarding a Vermont magistrate, whom he accused of lying and conspiring to prevent his admission to the bar of New Hampshire; applicant's continued claims that he is competent to provide drug counseling to narcotics users without a license; and most especially applicant's disturbing conduct in various forums, including this proceeding, which the commissioner was able to observe firsthand. As noted, the commissioner found that applicant's obsession with the perceived "corruption" of the family court is "pervasive" and prevented applicant from focusing on the issues in

this matter and other proceedings. The commissioner found, with reason, that applicant's demonstrated inability to focus and to "filter his presentations" in a variety of legal forums would render his representation of clients other than himself highly problematic, and demonstrated an inability to "make proper presentations of fact and law on behalf of a client or to focus on the client's needs in or out of court." The commissioner also observed, again with reason, that if applicant believed he could provide drug counseling services without training or a license, his judgment in representing clients in areas outside his area of expertise and competence was highly questionable, potentially "putting his clients at financial and emotional risk."

¶ 11. We thus find ample "competent and material evidence" to support the denial of applicant's admission. *Bitter*, 2008 VT 132, ¶ 18. Applicant's conduct indicates a present inability to "carry[ ] out duties to clients, courts or the profession." V.R.A.B. § 11(b)(2). Accordingly, we adopt the commissioner's recommendation, and conclude that applicant has not demonstrated the requisite fitness to practice law.

*The application of John Hirsch for admission to the bar of the State of Vermont is denied.*