MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:        2022 ME 44
Docket:          Oxf-21-273
Argued:          May 11, 2022
Decided:         August 9, 2022

Panel:           STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE JJ.*

KIM BOIVIN

v.

SOMATEX, INC.

HORTON, J.

[¶1]  Kim Boivin appeals from a summary judgment entered by the Superior Court (Oxford County, *McKeon, J.*) in favor of Somatex, Inc., on Boivin's complaint alleging that she suffers from post-traumatic stress disorder (PTSD) as a result of Somatex's negligence.  The court determined that Somatex was entitled to judgment as a matter of law because Somatex owed no duty to Boivin.  We affirm the judgment.

---

 *  Although Justice Humphrey participated in the appeal, he retired before this opinion was certified.

## I. BACKGROUND

[¶2]  Viewed in the light most favorable to Boivin as the nonprevailing party, the following facts are drawn from the parties' supported statements of material facts.  *See, e.g.*, *Toto v. Knowles*, 2021 ME 51, ¶ 2, 261 A.3d 233.

[¶3]  Boivin worked at the NewPage Paper Company in Rumford, where she operated large machinery, including 22.5-ton cranes, in her role as a super calendar crane operator.  NewPage hired Somatex, Inc., an overhead crane company based in Detroit, Maine, to repair one of NewPage's overhead cranes.  On August 25, 2014, two Somatex employees, Brant Munster and Zack Croft, were at the NewPage mill to perform the repair.[1]

[¶4] Boivin was asked by her NewPage supervisor to work with Munster and Croft while they repaired the crane.  To determine why the crane was not operating correctly, Munster climbed onto the crane to ride it while it was running.  Munster and Croft instructed Boivin to operate the crane while Munster was on it.  Boivin initially refused to do so several times, but she ultimately agreed.

---

[1]  The parties agree that Munster and Croft were acting within the scope of their employment at all relevant times.

[¶5]  While Boivin moved the crane, Munster unexpectedly stood up and was crushed between an overhead truss beam and the moving crane.  Munster was knocked out of the crane and fell approximately thirty feet to the floor, where he landed in front of Boivin.  Munster died as a result of his injuries, and Boivin sustained PTSD and related mental, emotional, and behavioral disorders as a result of the incident.  Boivin did not know Munster prior to this incident.

[¶6]  On March 26, 2021, Boivin filed an amended complaint against Somatex, alleging that its negligence caused her PTSD.  Boivin's complaint did not specify whether it was a claim for general negligence or negligent infliction of emotional distress (NIED).

[¶7]  On April 12, 2021, Somatex moved for summary judgment, arguing that Boivin had failed to establish that it or its employees owed a duty to Boivin pursuant to one of the limited circumstances where Maine law imposes a duty to avoid causing mental harm to others.  Boivin argued in her opposing memorandum that this was "a classic and standard negligence case," noting a forensic psychiatrist's supporting affidavit, which stated that "PTSD is both a physical and mental disorder."  Boivin further argued that she could nonetheless recover in an action for NIED.  In its reply, Somatex contended that

Boivin could seek recovery only under a theory of NIED because she had claimed no physical injury.

[¶8]   On August 6, 2021, the court granted Somatex's motion for summary judgment.  The court determined that, because Boivin's assertion of physical injury was based only on "the bare assertion that PTSD is a 'physical disorder,'" Boivin had failed to make a prima facie showing of physical injury and had no cause of action for general negligence.  It also determined that Boivin could not recover for NIED because she was not a direct victim of Somatex's negligence and Somatex owed her no independent duty of care.

[¶9]  Boivin timely appealed the judgment.  M.R. App. P. 2B.

## II.  DISCUSSION

[¶10]   "A party is entitled to a summary judgment if the summary judgment record, taken in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact in dispute and the moving party would be entitled to a judgment as a matter of law at trial." *Chartier v. Farm Fam. Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234.  "When the defendant is the moving party, [it] must establish that there is no genuine dispute of fact and that the undisputed facts would entitle [it] to judgment as a matter of law."  *Toto*, 2021 ME 51, ¶ 9, 261 A.3d 233.  A plaintiff opposing

summary judgment must in turn present a prima facie case for each challenged element of her claim.[2]  *See Chartier*, 2015 ME 29, ¶ 6, 113 A.3d 234; *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933.  Boivin challenges the court's determination that she failed to meet her burden of establishing a genuine dispute of material fact as to the elements of both duty and physical injury.  We review the court's grant of Somatex's motion for summary judgment de novo, considering the evidence and any reasonable inferences produced therefrom in the light most favorable to Boivin.  *See, e.g.*, *Canney v. Strathglass Holdings, LLC*, 2017 ME 64, ¶ 10, 159 A.3d 330.

[¶11]  To survive Somatex's motion for summary judgment and establish potential liability under a theory of either general negligence or NIED, Boivin was required to put forth facts demonstrating that Somatex breached a duty of care.  *See Quirion v. Geroux*, 2008 ME 41, ¶ 9, 942 A.2d 670 ("[T]o survive summary judgment on an action alleging negligence, the plaintiff must establish a prima facie case for each of the four elements of negligence: duty, breach, causation, and damages." (quotation marks omitted)); *Curtis v. Porter*,

---

[2]  Although a plaintiff opposing summary judgment most frequently bears the burden of making out her prima facie case as to every element, *see, e.g.*, *Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 8, 969 A.2d 935; *Est. of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759, the plaintiff may, in certain instances, satisfy the burden by putting forth prima facie evidence that establishes a genuine dispute of material fact as to only those elements that are challenged by a defendant's factual or legal argument.

6

2001 ME 158, ¶ 18, 784 A.2d 18 (explaining that the elements of NIED are similar to those of most negligence torts, though "there is no analogous general duty to avoid negligently causing emotional harm to others"); *see also Devine v. Roche Biomedical Lab'ys, Inc.*, 637 A.2d 441, 447 (Me. 1994) ("A plaintiff who fails to prove that the defendant violated a duty of care owed to the plaintiff cannot recover, whether the damage is emotional, physical, or economic."). "[T]he question of duty is a legal question decided by the court," *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 9, 118 A.3d 789, and "[t]he presence of injury or damage is . . . a question of fact," *Est. of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 17, 60 A.3d 759.

## A.    General Negligence

[¶12]  The duty of reasonable care that applies in an action for general negligence is a "duty to act reasonably to avoid causing *physical harm* to others."[3]  *Curtis*, 2001 ME 158, ¶ 18, 784 A.2d 18 (emphasis added); *see* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 6, cmt. f (Am. L. Inst. 2010) ("[A]n actor ordinarily has a duty to exercise

---

[3] Under the Restatement (Third) of Torts, "physical harm," for which damages are recoverable in an action for general negligence, "means the physical impairment of the human body ('bodily harm')," including "physical injury, illness, disease, impairment of bodily function, and death."  Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 4 (Am. L. Inst. 2010).

reasonable care. That is equivalent to saying that an actor is subject to liability for negligent conduct that causes physical harm."). Boivin asserts in the summary judgment record that she suffers from a "physical . . . disorder" and "physical symptoms of PTSD" and that "PTSD is currently considered by consensus of current medical and scientific research to be both a physical and mental disorder." She supports these assertions by affidavit of a forensic psychiatrist, who similarly asserts only that PTSD is "both a physical and mental disorder." She also relies on her own affidavit in opposition to Somatex's motion for summary judgment, which describes her PTSD symptoms as follows:

> I have been unable to work because of PTSD and the sequela[e] of my PTSD since the incident. My PTSD causes me to experience pain, suffering, mental anguish, and distress. I frequently experience images in my mind of the events of August 25, 2014 and regret that I had agreed to operate the crane with Mr. Munster on it. I frequently experience night terrors that plague me at night, leaving me exhausted, confused, and unable to concentrate on daily personal tasks the next day.[4]

---

[4] Boivin's answers to interrogatories describe her experience of sleeplessness as well as "extreme anxiousness, irritability, depression, stress, guilt, sadness, helplessness, and shame," explaining that she no longer enjoys being in groups, including family gatherings. Her interrogatory answers also assert that she suffers from vertigo that causes dizziness and vomiting, but there is no evidence in the record that the vertigo was triggered or caused by PTSD. None of these cited portions of her interrogatory answers are part of the summary judgment record. *See* M.R. Civ. P. 56(e); *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 9, 770 A.2d 653 ("The court is neither required nor permitted to independently search a record to find support for facts offered by a party."). Even so, they do not lend support to her argument.

8

[¶13]   What is lacking in Boivin's proof submitted in opposition to Somatex's summary judgment motion is evidence that Somatex caused her any physical injury or harm for purposes of her claim that Somatex breached its general negligence duty.[5]  Boivin's assertions do not create a genuine dispute of material fact as to a physical injury suffered by Boivin, nor do they create an issue of fact as to PTSD qualifying as a physical injury in her case.  *See Polk v. Town of Lubec*, 2000 ME 152, ¶ 11, 756 A.2d 510 ("To avoid summary judgment, a party may not simply rely on conclusory allegations . . . but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits." (quotation marks omitted)).

[¶14] This case therefore does not call on us to decide whether the effects of PTSD can ever qualify as a physical injury that would fall within the scope of the general negligence duty of care.  Because Somatex owed no general duty of care to avoid causing Boivin the emotional harm that she asserts, the court

---

[5]  Boivin does not argue or put forth facts asserting that physical manifestations of an emotional injury meet the legal definition of "physical injury."  We also note that the two are distinct under our case law; indeed, evidence of the physical manifestations of a plaintiff's emotional harm was previously a prerequisite to recovery for that emotional harm.  *See Wallace v. Coca-Cola Bottling Plants, Inc.*, 269 A.2d 117, 121 (Me. 1970), *overruled by Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433, 437 (Me. 1982) ("We now reject the notion that the plaintiff must allege or prove . . . physical manifestations of the distress.").

appropriately entered summary judgment with respect to Boivin's general negligence claim against Somatex.

## B.    Negligent Infliction of Emotional Distress

[¶15]  Boivin has made a prima facie showing that she has suffered severe emotional distress for purposes of her NIED claim against Somatex.  However, the duties that apply in an action for emotional harm are more limited than the general duty to avoid causing physical harm.  Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7, cmt. m (Am. L. Inst. 2010); *Curtis*, 2001 ME 158, ¶ 18, 784 A.2d 18 ("[T]here is no analogous general duty to avoid negligently causing emotional harm to others.").  This distinction reflects the fact that our determination of duty for claims of emotional harm "is not generated by traditional concepts of foreseeability."  *Curtis*, 2001 ME 158, ¶ 18, 784 A.2d 18.  Instead, "we have recognized a duty to act reasonably to avoid emotional harm to others in very limited circumstances: first, in claims commonly referred to as bystander liability actions; and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed."[6]  *Id.* ¶ 19.

---

[6] A plaintiff can also recover damages for emotional distress when the tortfeasor has committed a tort for which such damages are recoverable, such as negligence resulting in physical injury. *Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18.

[¶16]  There is no issue of fact on this record that could generate a duty to avoid emotional harm under either of these limited circumstances.  Boivin did not assert a close relationship to Munster, nor did she argue that she could recover as a bystander.  *See Coward v. Gagne & Son Concrete Blocks, Inc.*, 2020 ME 112, ¶ 14, 238 A.3d 254 (explaining that, in order to recover in a bystander NIED action, a plaintiff must demonstrate, among other factors, a close relationship with the victim); *see also Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433, 435-38 (Me. 1982).  Boivin also did not assert or argue the existence of a special relationship between her and Somatex such that, under the circumstances, Somatex owed her a duty to avoid causing emotional harm. *Cf. Gammon v. Osteopathic Hosp. of Me., Inc.*, 534 A.2d 1282, 1283, 1285 (Me. 1987) (son found a severed leg in his father's belongings); *Bolton v. Caine*, 584 A.2d 615, 616, 618 (Me. 1990) (patient was misinformed about critical x-ray findings); *Rowe v. Bennett*, 514 A.2d 802, 802, 807 (Me. 1986) (patient's therapist was sexually involved with the patient's companion).[7]

---

[7] Although we have on occasion distinguished between "direct" and "indirect" victims in order to define the limits of a claim for NIED, *see Michaud v. Great N. Nekoosa Corp.*, 1998 ME 213, ¶ 16, 715 A.2d 955; *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 6, 711 A.2d 842; *Cameron v. Pepin*, 610 A.2d 279, 280-81 (Me. 1992), that characterization was an attempt to distinguish cases where the plaintiff experiences harm directly due to the defendant's negligence from those where the plaintiff's harm results from witnessing harm to a third person—i.e., bystander cases, *see Cameron*, 610 A.2d 279, 280-81 (Me. 1992).  However, for a plaintiff to qualify as a so-called "direct victim," rather than as a bystander, does not automatically impose upon the defendant a duty to avoid emotional harm; rather, we have recognized a duty to avoid emotional harm "in circumstances in

[¶17] Because Boivin did not generate a genuine dispute of material fact as to whether Somatex breached its general negligence duty of care not to cause her physical injury or as to whether Somatex owed Boivin an independent duty under the circumstances to avoid causing emotional harm for purposes of her NIED claim, the court did not err in determining that Somatex was entitled to judgment as a matter of law.

The entry is:

Judgment affirmed.

James J. MacAdam, Esq. (orally), MacAdam Jury, P.A., Freeport, for appellant Kim Boivin

Matthew T. Mehalic, Esq. (orally), and Trevor D. Savage, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellee Sometex, Inc.

Oxford County Superior Court docket number CV-2020-49
FOR CLERK REFERENCE ONLY

which a special relationship exists between the actor and the person emotionally harmed." *Curtis*, 2001 ME 158, ¶ 19 & n.17, 784 A.2d 18; *see also* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 47, cmt. f (Am. L. Inst. 2012) (disfavoring inquiry into the status of the plaintiff as a "direct victim" and suggesting instead inquiry into the occurrence of the alleged negligent conduct as part of "specified categories of activities, undertakings, or relationships in which negligent conduct is especially likely to cause serious emotional harm").