STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2021-162

TRACY L. HOUGHTON, AS )
PERSONAL REPRESENTATIVE )
OF THE ESTATE OF BRIANNA )
M. HOUGHTON, )
       )
           Plaintiff, )
       )
       v. )
       )
BLACK BEAR MEDICAL, INC., )
       )
           Defendant. )

**ORDER ON PENDING MOTIONS**

This matter is before the Court on Defendant Black Bear Medical, Inc.'s ("Black Bear") Motion for Summary Judgment and Motion to Exclude Plaintiff's Liability Expert, Steven Thomas, P.E., as well as a Motion for Leave to Supplement Expert Designation filed by Plaintiff Tracy L. Houghton, as personal representative of the Estate of Brianna M. Houghton ("Plaintiff"). For the following reasons, the Court denies Plaintiff's motion, grants Black Bear's Motion to Exclude Plaintiff's Liability Expert, and denies Black Bear's Motion for Summary Judgment.

## I. Expert Testimony

The Court will begin by addressing the competing motions regarding expert testimony because the ruling on that will be relevant to the determination on Black Bear's Motion for Summary Judgment.

The scheduling order, docketed May 24, 2021, sets a deadline for plaintiff's expert witness designation of three months from the date of the order. The Court, by order dated September 23, 2022, extended the deadline for Plaintiff's Expert Designation to December 20, 2022. The scheduling order itself states that "No extensions of the designation deadlines will be granted except on motion demonstrating good cause and that discovery

REC'D CUMB CLERKS OFC
OCT 10 '23 AM 11:15

was timely and diligently conducted in good faith. *Counsel shall not assume that agreements to designate experts beyond these deadlines will be accepted by the court."*

Plaintiff only moved to enlarge time to designate an expert witness after the deadline for designating an expert had passed—or, rather, still has not moved, except to supplement the untimely designation. Accordingly, the Court may only grant an enlargement of time upon a showing of excusable neglect. *Hutz v. Alden*, 2011 ME 27, ¶ 21, 12 A.3d 1174.

No satisfactory showing of excusable neglect has been made. Plaintiff argues that an extension was needed to allow their proposed expert to review deposition testimony of an anticipated witness and that Plaintiff sought and obtained approval of an enlargement from opposing counsel. In other words, Plaintiff argues that counsel mistakenly believed that an informal agreement between the parties—without any notification to the Court—was sufficient to extend the deadline. Mistake as to the law or procedural rules does not constitute excusable neglect.

Because the initial expert designation was untimely, the Court will not grant leave to amend. For the same reasons, the Court will grant Black Bear's Motion to Exclude Plaintiff's Liability Expert, Steven Thomas, P.E. Additionally, as a sanction for noncompliance with the scheduling order and discovery rules and in fairness to Black Bear, Plaintiff is precluded from offering any undesignated expert testimony. *See Pitt v. Frawley*, 1999 ME 5, ¶ 7-9, 722 A.2d 358 (holding that the trial court did not err by precluding the plaintiff from eliciting expert testimony from the defendant attorney when the plaintiff had failed to designate any expert witnesses).

II. **Motion for Summary Judgment**

Summary judgment is appropriate "if the summary judgment record, taken in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue

of material fact in dispute and the moving party would be entitled to a judgment as a matter of law at trial." *Chartier v. Farm Fam. Life Ins. Co.*, 2015 ME 29, ¶ 6, 113 A.3d 234; *see* M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a 'genuine issue' when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Toto v. Knowles*, 2021 ME 51, ¶ 8, 261 A.3d 233 (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773). To survive a defendant's motion for summary judgment, a plaintiff must present a prima facie case for each challenged element of her claim. *See Boivin v. Somatex, Inc.*, 2022 ME 44, ¶ 10, 279 A.3d 393.

The summary judgment record consists only of the parties' properly supported statements of material fact and the portions of the record referenced therein. *See Dorsey v. N. Light Health*, 2022 ME 62, ¶ 10, 288 A.3d 386. To controvert a party's statement of fact, an opposing party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2).

### A. Facts

The facts in the summary judgment record, as established through the parties' statements of material facts, are as follows:

On July 19, 2015, Plaintiff's daughter, Brianna Houghton ("Brianna"), slipped and fell while transferring from the shower to her wheelchair, a TiLite Aero X FXD Front Tisport/Z2MPCT2 ("the Wheelchair"). (Def.'s Supp'g S.M.F. ¶¶ 1-2.) As Brianna fell, she impaled her rectum on a pole extending from the footrest of the Wheelchair, causing her to sustain injuries and undergo medical treatment. (Def.'s Supp'g S.M.F. ¶ 3.) Plaintiff was present just after Brianna injured herself on one the poles extending from the Wheelchair. (Pl.'s Add'l S.M.F. ¶ 20.) Brianna required a permanent colostomy due to her injuries. (Pl.'s Add'l S.M.F. ¶ 27.) Plaintiff claims that the footrest modification extending

from the Wheelchair was a defect, danger, and safety hazard and that Black Bear failed to exercise reasonable care in making this modification. (Def.'s Supp'g S.M.F. ¶ 4.)

Black Bear is a provider of medical equipment. (Def.'s Supp'g S.M.F. ¶ 7.) Among other services, Black Bear works with patients to design and provide specialized medical equipment, including wheelchairs, adapted to individual patients' needs. (Def.'s Supp'g S.M.F. ¶ 7.)

Brianna was born with spina bifida and had been a wheelchair user before July 19, 2015. (Def.'s Supp'g S.M.F. ¶ 5.) Plaintiff began ordering wheelchairs for Brianna through Black Bear when Brianna reached her mid-teen years. (Def.'s Supp'g S.M.F. ¶ 6.) To order a wheelchair, Plaintiff and Brianna would visit a medical facility to be fitted for a wheelchair that met her needs, medical conditions, and physical requirements. (Def.'s Supp'g S.M.F. ¶ 8.) During these visits, a medical professional and a Black Bear service technician would take necessary measurements to identify the type of wheelchair that would be suitable for Brianna. (Def.'s Supp'g S.M.F. ¶ 8; Pl.'s Resp. Def.'s Supp'g S.M.F. ¶ 8.) The evidence available to Black Bear suggests that the Wheelchair was delivered to Black Bear and provided to Plaintiff and Brianna in or around March 2012. (Def.'s S.M.F. ¶¶ 13, 14.)

When Brianna and Plaintiff received the Wheelchair, they realized that the footrests were too low for Brianna's legs. (Def.'s S.M.F. ¶ 15; Pl.'s Resp. Def.'s Supp'g S.M.F. ¶ 15.) Plaintiff claims that a Black Bear employee, Don McKenna, modified the Wheelchair to raise the footrests. (Def.'s Supp'g S.M.F. ¶ 16.)

Mr. McKenna was an Assistant Technology Provider for Black Bear with over thirty years of experience. (Def.'s Supp'g S.M.F. ¶ 18.) As an Assistant Technology Provider, Mr. McKenna received specialized training and ongoing continuing education. (Def.'s Supp'g S.M.F. ¶ 21.) Mr. McKenna would work with the patient, representatives,

and medical providers to find the most appropriate wheelchair. (Def.'s Supp'g S.M.F. ¶ 24.)

Mr. McKenna believes that he was "more than likely" the person who installed the modification on the Wheelchair because he was the one who delivered the Wheelchair. (Pl.'s Add'l S.M.F. ¶ 2.) Mr. McKenna does not have a specific memory of making any modification to the Wheelchair before or after Brianna's fall. (Def.'s Supp'g S.M.F. ¶¶ 26, 28.) Both Plaintiff and Mr. McKenna agree that a modification was necessary for Brianna's safety. (Def.'s Supp'g S.M.F. ¶ 17; Pl.'s Resp. Def.'s Supp'g S.M.F. ¶ 17.)

Plaintiff was present when she and Brianna picked up the modified Wheelchair from Black Bear. (Pl.'s Add'l S.M.F. ¶ 3.) The modifications included two black poles sticking up from the Wheelchair, one on each side. (Pl.'s Add'l S.M.F. ¶ 7.) The pole that impaled Brianna was on the Wheelchair when she received it from Black Bear. (Pl.'s Add'l S.M.F. ¶ 4.) The modifications were not changed or moved from the time Black Bear delivered the modified Wheelchair until the time of Brianna's fall. (Pl.'s Add'l S.M.F. ¶¶ 11, 12.)

After Brianna received the Wheelchair until her fall on July 19, 2015, Brianna had had no issues with transferring to and from the Wheelchair. (Def.'s Supp'g S.M.F. ¶ 29.) Until July 19, 2015, Plaintiff had no concerns that the modification was a hazard and did not notify Black Bear of any safety concerns. (Def.'s Supp'g S.M.F. ¶ 30.)

At no point did an engineer, physician, or other expert examine the subject wheelchair to determine whether Black Bear's alleged modification was defective or dangerous. (Def.'s Supp'g S.M.F. ¶¶ 32, 38; Pl.'s Resp. Def.'s Supp'g S.M.F. ¶¶ 32, 38.) A physical therapist placed a foam noodle over the protruding pole to prevent additional injuries after Brianna's fall. (Def.'s Supp'g S.M.F. ¶¶ 32, 38; Pl.'s Resp. Def.'s Supp'g S.M.F. ¶¶ 32, 38.)

Mr. McKenna testified that "common sense" would dictate that the placement of the poles would have been a "problem." (Pl.'s Add'l S.M.F. ¶ 16.) Mr. McKenna testified that he could have come up with a solution for the footrest that would not have involved having the poles mounted on the outside of the Wheelchair. (Pl.'s Add'l S.M.F. ¶ 17.)

Plaintiff told Mr. McKenna about Brianna's injury and asked him if anything could be done to prevent it from happening again. (Pl.'s Add'l S.M.F. ¶ 28.) Mr. McKenna volunteered to cut the poles off. (Pl.'s Add'l S.M.F. ¶ 29.) Plaintiff was present when Mr. McKenna took the Wheelchair and returned it with the poles cut down and capped.[1] (Pl.'s Add'l S.M.F. ¶ 30.)

After Plaintiff served a Notice of Claim on Black Bear, Black Bear requested a time to inspect the Wheelchair and requested that Plaintiff preserve the Wheelchair. (Def.'s Supp'g S.M.F. ¶ 40.) Black Bear made a similar request upon the Plaintiff during discovery. (Def.'s Supp'g S.M.F. ¶ 44.) However, Plaintiff discarded the Wheelchair after Black Bear's initial request and after litigation commenced. (Def.'s Supp'g S.M.F. ¶ 45.) When Plaintiff gave the Wheelchair away, she was not aware that she should keep it. (Pl.'s Add'l S.M.F. ¶ 36.)

Plaintiff failed to timely designate an expert witness. (Def.'s Supp'g S.M.F. ¶¶ 50-58.) As discussed above, Plaintiff is precluded from offering the testimony of her proposed expert witness on liability.[2]

Plaintiff's First Amended Complaint consists of five counts: Count I for Strict Liability: Defective Design or Manufacture, Count II for Breach of Implied Warranty of

---

[1] The Court can consider this as evidence of a feasible alternative design. *See* Rule 407(a); *Espeaignette v. Gene Tierney Co.*, 43 F.3d 1, 5-8 (1st Cir. 1994) (holding that the trial court erred in a products liability case by excluding evidence of a subsequent modification under Rules 403 and 407).

[2] Plaintiff's Statement of Additional Material Facts includes several statements regarding expert witness designations that are similar to the facts already considered by the Court in the context of Plaintiff's Motion for Leave to Supplement Expert Designation and Black Bear's Motion to Exclude Plaintiff's Liability Expert. The Court sees no need to consider these facts again and omits further discussion of them.

Merchantability, Count III for Breach of Implied Warranty of Fitness for a Particular Purpose, Count IV for Strict Liability: Failure to Warn, and Count V for Negligence. Black Bear moves for summary judgment on all counts of Plaintiff's First Amended Complaint.

### B.   Counts I and V: Defect in Design

Black Bear argues that Plaintiff cannot show that the Wheelchair modification was "defective" in design. The Law Court has said:

> In actions based upon defects in design, negligence and strict liability theories overlap in that under both theories the plaintiff must prove that the product was defectively designed thereby exposing the user to an unreasonable risk of harm. Such proof will involve an examination of the utility of its design, the risk of the design and the feasibility of safer alternatives.

*St. Germain v. Husqvarna Corp.*, 544 A.2d 1283, 1285 (Me. 1988) (quoting *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1148 (Me. 1983).

Thus, to avoid summary judgment on Counts I[3] and V, Plaintiff must make a showing that the risk of harm posed by the modified footrest of the Wheelchair was unreasonable in light of the utility of its design and the feasibility of safer alternatives. Black Bear argues that in the absence of expert testimony, Plaintiff cannot prove defective design.[4]

---

[3] 14 M.R.S. § 221 provides:

> One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

[4] Plaintiff argues that she need not designate an expert witness because Mr. McKenna's deposition testimony adequately establishes the elements of a products liability claim. The Court, however, would disallow Plaintiff's use of Mr. McKenna's testimony as an expert because of her failure to timely designate anyone, including Mr. McKenna, as an expert. *Pitt*, 1999 ME 5, ¶ 7-9, 722 A.2d 358.

Contrary to Black Bear's contentions, Maine law does not always require expert testimony in products liability cases. The Law Court has certainly never held that expert testimony is required in all products liability cases. In fact, the Law Court has adopted Restatement (Third) of Torts: Products Liability § 3 (Am. L. Inst. 1998), which expressly permits circumstantial evidence to prove a product defect in certain circumstances. *Est. of Pinkham v. Cargill, Inc.*, 2012 ME 85, ¶¶ 19-20, 23, 55 A.3d 1.

Even in medical malpractice and legal malpractice cases, where expert testimony is generally required, there is "an exception. . . for circumstances 'where the negligence and harmful results are sufficiently obvious as to lie within common knowledge;' in those situations, 'a verdict may be supported without expert testimony.'" *Jim Mitchell and Jed Davis, P.A. v. Jackson*, 627 A.2d 1014, 1017 (Me. 1993) (quoting *Cyr v. Giesen*, 108 A.2d 316, 318 (Me. 1954)); *cf. State v. Abdullahi*, 2023 ME 41, ¶ 21, 298 A.3d 815 ("Lay opinion evidence is appropriate when 'the subject of inquiry is one which is plainly comprehensible by the jury and of such a nature that unskilled persons would be capable of forming correct conclusions respecting it.'" (quoting *Ginn v. Penobscot Co.*, 334 A.2d 874, 883 (Me. 1975))).

The summary judgment record contains evidence that the utility of the footrest modification was derived from the ability to adjust the footrest to fit Brianna. Plaintiff has presented evidence that a safer alternative (shortening and capping the rods) was feasible without defeating its utility. Unlike cases involving more complex components of a wheelchair, the alleged design defect is not beyond a jury's understanding. *Compare Niehaus v. United Seating & Mobility, Inc.*, No. 10–160–GPM, 2011 WL 5325652, at *3-4 (S.D. Ill. Nov. 3, 2011) (expert testimony required to establish defect in joystick and seatbelt in a power wheelchair) *and Bryant v. Scooter Store*, 2009 WL 2414111, at *1-2, *6 (Ohio Ct. App. Aug. 7, 2009) (expert testimony required to establish that power wheelchair's

malfunction after exposure to moisture was caused by defective design) *with Varady v. Guardian Co.*, 506 N.E.2d 708, 711 (Ill. App. Ct. 1987) (no expert testimony required to prove defect in crutch that buckled under user).

Plaintiff has made a showing sufficient to survive summary judgment on the challenged elements of her strict liability and negligence claims.

## C.     Remaining Counts

Although Black Bear moves for summary judgment on all counts of Plaintiff's First Amended Complaint, Black Bear makes substantive arguments concerning only Counts I and V. Because a plaintiff opposing a defendant's motion for summary judgment need only establish a prima facie case as to each challenged element to survive summary judgment, the Court denies Black Bear's motion as to the remaining counts of Plaintiff's First Amended Complaint without further discussion. *See Boivin*, 2022 ME 44, ¶ 10, 279 A.3d 393; *cf. Bayview Loan Servicing, LLC v. Bartlett*, 2014 ME 37, ¶ 15 n.5, 87 A.3d 741 (parties waive arguments by failing to adequately develop them).

## D.     Spoliation

Finally, Black Bear argues that Plaintiff's First Amended Complaint should be dismissed as a sanction for spoliating evidence or that the jury should be instructed on a negative inference at trial. Although sanctions certainly may be appropriate under Maine law for spoliation, the Court is hesitant to resolve what is more properly the subject of a motion for sanctions or motion in limine in the context of a motion for summary judgment. *See Gagne v. D.E. Jonsen, Inc.*, 298 F. Supp. 2d 145, 147 (D. Me. 2003) ("The remedy for spoliation of evidence is sanctions, including 'dismissal of the case, the exclusion of evidence, or a jury instruction on the spoliation inference.'" (quoting *Driggin v. Am. Sec. Alarm Co.*, 141 F. Supp. 2d 113, 120 (D. Me. 2000))). In any event, Black Bear does not dispute (for the purposes of summary judgment) that Plaintiff was unaware at

the time she disposed of the Wheelchair that she should not have disposed of it or that Black Bear had planned to inspect it.

## III.    Conclusion

For the foregoing reasons, the Court will preclude Plaintiff from presenting expert testimony. Despite the lack of expert testimony, Plaintiff has made a showing sufficient to survive summary judgment as to the challenged elements of her claims. Finally, the Court will not impose sanctions for spoliation at this time. Black Bear may, however, renew its request through a motion for sanctions or motion in limine.

The entry is:

1. Plaintiff Tracy L. Houghton's Motion for Leave to Supplement Expert Designation is DENIED;

2. Defendant Black Bear Medical, Inc.'s Motion to Exclude Plaintiff's Liability Expert, Steven Thomas, P.E. is GRANTED. Plaintiff is precluded from offering the testimony of her proposed expert Steven Thomas, P.E., or any undesignated expert witness; and

3. Defendant Black Bear Medical, Inc.'s Motion for Summary Judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: __10/10/23__

_____
MaryGay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 10/10/2023