NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 16

No. 23-AP-086

| | |
|---|---|
| Jennifer Zeno-Ethridge and Dennis Ethridge | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Civil Division |
| | |
| Comcast Corporation et al. | October Term, 2023 |

Mary Miles Teachout, J., (Ret.)

William H. Meub and Andrew J. Snow of Meub Associates, PLC, Rutland, for
 Plaintiffs-Appellants.

Richard Windish and Elizabeth Willhite of Primmer, Piper, Eggleston & Cramer, Woodstock, for
 Defendants-Appellees Comcast Corporation, Comcast of Connecticut/Georgia/Massachusetts/
 New Hampshire/New York/North Carolina/Virginia/Vermont, LLC, and Eustis Cable
 Enterprises, LTD.

Lawrence H. Behrens of Law Offices of Thomas M. Franco, Boston, Massachusetts, for
 Appellees Green Mountain Flagging, LLC, and Green Mtn. Concert Services, d/b/a Green
 Mountain Flagging.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.    **EATON, J.**   Plaintiff Jennifer Zeno-Ethridge appeals the trial court's grant of summary judgment in favor of defendants Comcast Corporation, Eustis Cable, and Green Mountain Flagging on claims of negligent infliction of emotional distress and negligence. Plaintiff's husband David Ethridge appeals the trial court's grant of summary judgment on his

loss-of-consortium claim.[1] Plaintiff argues that we should modify the "physical impact" requirement for emotional distress claims and asserts that the evidence presented sufficiently supports her claims. We affirm.

¶ 2. The relevant facts of this appeal are undisputed. In March 2016, plaintiff was driving southbound on Route 7. At that time, Eustis Cable workers were installing utility cables on Route 7 in Middlebury on behalf of Comcast Corporation. A Eustis Cable utility truck was parked on the side of the road, and Eustis Cable workers were being assisted by flaggers from Green Mountain Flagging. As plaintiff drove past the site, she noticed the utility truck moving in reverse towards a flagger. She then saw the flagger get pulled down and sucked under the truck. Sensing his imminent danger, she drove her car behind the truck in an attempt to prevent the truck from continuing to back up. When she stopped her car and put it in park, she was about one car length behind the truck, which by then had stopped moving. She was in no danger herself. After the truck had stopped, she got out of her car and rushed toward the scene. By the time she reached the truck, however, it was too late. The flagger's skull had been crushed and his body mutilated underneath the truck.[2] Plaintiff approached the cab of the truck and told the driver not to get out because of the gruesomeness of the scene. As she did so, blood and brain matter from the flagger got onto her pants and shoes. Plaintiff then went back to her car to get a blanket to cover the flagger's body.

¶ 3. Five months after the incident, plaintiff was diagnosed with post-traumatic stress disorder (PTSD) and depression. She had previously been treated for depression but had no prior history of PTSD.

---

[1] While Dennis Etheridge is also a plaintiff by virtue of his loss-of-consortium claim, we refer to Jennifer Zeno-Ethridge as plaintiff and Dennis Ethridge as husband for clarity.

[2] This same incident also formed the subject of our decision in Commissioner of Labor v. Eustis Cable Enterprises, LTD, 2019 VT 2, ¶ 1, 209 Vt. 400, 206 A.3d 1260.

¶ 4.     Plaintiff and husband sued defendants based on three common-law tort claims: negligent infliction of emotional distress (NIED), negligence, and loss of consortium.  Defendants moved for summary judgment on all three claims, arguing that the facts did not support the required elements of the claims.  The trial court agreed.  Specifically, the trial court determined that plaintiff's contact with the blood and brain matter alone was not a "physical impact from external force," as required for a prima facie NIED claim.  The trial court also concluded that plaintiff failed to provide sufficient evidence of an "actual injury," as required for a prima facie negligence claim, because her sole alleged injury was a PTSD diagnosis.  The court concluded that actions to recover for emotional injuries fall under the torts of intentional or negligent infliction of emotional distress, not negligence.  Because these claims both failed, the trial court also dismissed husband's derivative loss-of-consortium claim.  Plaintiff and husband appeal, arguing that the trial court's grant of summary judgment in favor of defendants was in error.

## I.  Standard of Review

¶ 5.     We review a trial court's grant of summary judgment de novo.  Gordon v. Bd. of Civ. Auth. for Town of Morristown, 2006 VT 94, ¶ 4, 180 Vt. 299, 910 A.2d 836.  We apply the same standard as the trial court, under Vermont Rule of Civil Procedure 56(a), to determine "whether there are genuine issues of material fact and, if not, whether the moving part[ies are] entitled to judgment as a matter of law."  Carr v. Peerless Ins. Co., 168 Vt. 465, 466, 724 A.2d 454, 455 (1998).  We draw all reasonable inferences in the light most favorable to the nonmoving parties.  Buxton v. Springfield Lodge No. 679, Loyal Ord. of Moose, Inc., 2014 VT 52, ¶ 2, 196 Vt. 486, 99 A.3d 171.

## II.  Negligent Infliction of Emotional Distress

¶ 6.     This Court addressed the necessary elements for a prima facie case of NIED in Brueckner v. Norwich University, 169 Vt. 118, 730 A.2d 1086 (1999).  There, we stated:

3

> To establish a claim for negligent infliction of emotional distress, a plaintiff must make a threshold showing that he or someone close to him faced physical peril. The prerequisites for establishing a claim differ according to whether plaintiff suffered a physical impact from an external force. If there has been an impact, [the] plaintiff may recover for emotional distress stemming from the incident during which the impact occurred. If plaintiff has not suffered an impact, plaintiff must show that: (1) he was within the "zone of danger" of an act negligently directed at him by defendant, (2) he was subjected to a reasonable fear of immediate personal injury, and (3) he in fact suffered substantial bodily injury or illness as a result.

Id. at 125, 730 A.2d at 1092 (citations omitted); see In re Montagne, 425 B.R. 111, 129 (Bankr. D. Vt. 2009) (summarizing elements of NIED under Vermont law).[3] We thus generally limit recovery for emotional harm to cases with concurrent physical harms. See Vincent v. DeVries, 2013 VT 34, ¶ 25, 193 Vt. 574, 72 A.3d 886 ("[The] general rule disallow[s] . . . emotional distress damages in the absence of . . . [a] physical impact."); Nichols v. Cent. Vt. Ry. Co., 94 Vt. 14, 18, 109 A. 905, 907 (1919) ("[T]here can be no recovery for mental suffering where there is no attendant physical injury.").[4]

### A. Physical-Impact Requirement

¶ 7. Plaintiff first argues that this Court should eliminate the established "physical impact" limitation in favor of a "Negligence Plus" standard. Under this proposed standard, any severe mental harm would be actionable even without the concurrent physical impact our common law has long required. It is well settled that we are "not a slavish adherent to . . . stare decisis" and can amend the common law "should we deem it appropriate to do so." Ferry v. City of Montpelier, 2023 VT 4, ¶ 40, __ Vt. __, 296 A.3d 749; Hay v. Med. Ctr. Hosp. of Vt., 145 Vt. 533, 536-37,

---

[3] Because the parties do not dispute the trial court's determination that plaintiff "had no fear of personal injury," and thus was not in a zone of danger, this appeal concerns only the "physical impact" derivation of NIED claims. See Brueckner, 169 Vt. at 125, 730 A.2d at 1092.

[4] Later cases broadened the ability for an NIED claimant to prevail, absent physical injury, under two narrow circumstances: cases based either on the mishandling of bodily remains or the negligent transmission of a death announcement. See Vincent, 2013 VT 34, ¶ 14. The parties agree that these exceptions do not apply here.

4

496 A.2d 939, 941 (1985). It is appropriate only when there is "plain justification" based on "our community's ever-evolving circumstances and experiences." State v. Carrolton, 2011 VT 131, ¶ 15, 191 Vt. 68, 39 A.3d 705; Ferry, 2023 VT 4, ¶ 40.

¶ 8. When a party is not in a zone of danger, requiring a physical impact as part of an NIED claim is a "well-established and almost universally embraced" aspect of the common law. Vincent, 2013 VT 34, ¶ 12. This requirement has existed for well over a century, see Nichols, 94 Vt. at 18, 109 A. at 907, and has since been developed, reexamined, and affirmed as recently as 2013, see Vincent, 2013 VT 34, ¶ 25. It recognizes, in short, that there must be some limit on recovery for emotional harms. See Nichols, 94 Vt. at 18, 109 A. at 907. We acknowledge the gruesome nature of this incident, and its effect on plaintiff, but decline to eliminate the longstanding physical-impact requirement because three main policy considerations that have long supported it remain relevant today. See Ferry, 2023 VT 4, ¶ 40 (requiring "plain justification" to amend common law and declining to do so where no such showing has been made); Carrolton, 2011 VT 131 ¶ 15 (similar).[5] Although we do not imply that these policy justifications wholly apply to the facts of this case, removing the physical-impact requirement entirely, as plaintiff seeks, would expand the scope of future claims without a reasonable limitation.

¶ 9. First, because mental or emotional injuries are often an unforeseeable result, the physical-impact requirement avoids holding defendants liable for unforeseeable harms. See Vincent, 2013 VT 34, ¶¶ 14-16 (noting potential unforeseeability of mental injuries). Foreseeability is an important consideration in tort law because, if the risk of harm is

---

[5] In Vincent, we expressed, in dicta, some doubt as to whether the reasons for retaining a physical-impact limitation were "entirely compelling," even though that issue was not squarely before the Court. See 2013 VT 34, ¶ 15; see also Zebic v. Rhino Foods, Inc., 2021 VT 35, ¶ 27 n.3, 214 Vt. 573, 256 A.3d 84 (Robinson, J., dissenting) (" 'Dicta' . . . refer[] to . . . judicial comment[s] . . . that [are] unnecessary to the decision in the case." (quotation omitted)); Chittenden Town Sch. Dist. v. Dep't of Educ., 169 Vt. 310, 348, 738 A.2d 539, 566 (1999) (Johnson, J., concurring) ("Dicta, it need hardly be stated, have no binding precedential effect.").

unforeseeable, potential tortfeasors cannot tailor their behavior to avoid those harms. See Clymer v. Webster, 156 Vt. 614, 632, 596 A.2d 905, 916 (1991) ("[W]hether [a potential tortfeasor] has a duty . . . often depends on the foreseeability of [the] consequences."). In "the absence of a physical . . . injury," emotional harms are often "not readily foreseeable as [the] natural . . . consequence[] of the defendant's negligent conduct." Rickey v. Chicago Transit Auth., 428 N.E.2d 596, 598 (Ill. App. Ct. 1981), aff'd and remanded, 457 N.E.2d 1 (Ill. 1983). Instead, emotional injuries often "depend on psychological factors" that make some plaintiffs more susceptible to emotional harms. Butler v. Burlington N., 119 S.W.3d 620, 624-25 (Mo. Ct. App. 2003) (quotation omitted)). These psychological factors are not "ordinarily . . . apparent" to defendants, making emotional injuries inherently unforeseeable and "more difficult [for defendants] to predict." Id.; see Lawson v. Mgmt. Activities, Inc., 81 Cal. Rptr. 2d 745, 749 (Ct. App. 1999).

¶ 10. Rectifying, in part, this problem of foreseeability, the physical-impact requirement ensures that the defendant breached a duty, by physically impacting the plaintiff, and that the plaintiff, having been physically impacted, was a foreseeable victim of that breach. See Saechao v. Matsakoun, 717 P.2d 165, 167-69 (Or. App. 1986), abrogated in part on other grounds by Philibert v. Kluser, 385 P.3d 1038 (Or. 2016); see also Lawson, 81 Cal. Rptr. 2d at 749 (indicating that NIED standards must avoid unforeseeable claims and "cannot countenance the doctrine of the eggshell psyche"). The physical-impact requirement thus "strik[es] a fair balance" between the need to compensate plaintiffs for genuine mental injuries and protect defendants from unforeseeable claims. Michaud v. Great N. Nekoosa Corp., 1998 ME 213, ¶ 15, 715 A.2d 955.

¶ 11. Second, the physical-impact requirement hampers the potential for unlimited liability in its absence. Cf. Vincent, 2013 VT 34, ¶¶ 14-16 (failing to mention risk of unlimited liability absent physical-impact limitation). "[T]here are no . . . finite limits on the number of persons who might suffer emotional injury as a result of a given negligent act." Consolidated Rail

6

Corp. v. Gottshall, 512 U.S. 532, 545 (1994); accord Baldwin v. State, 125 Vt. 317, 320, 215 A.2d 492, 494 (1965), overruled on other grounds by Whitney v. Fisher, 138 Vt. 468, 417 A.2d 934 (1980), and Hay, 145 Vt. 533, 496 A.2d 939 ("Each man's life is linked to the lives of many others, and an injury to one inevitably has its impact upon . . . others."). As such, permitting future plaintiffs to bring emotional-distress claims absent this limitation would place an "unreasonable burden on all human activity," forcing defendants "to pay for the lacerated feelings of every other person . . . including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends." W. Keeton, Prosser and Keeton on Torts § 54 (5th ed. 1984).

¶ 12.    Because this Court has "never . . . suggested that everyone . . . adversely affected by an injury inflicted upon another should be allowed to recover," it remains our duty to "fix the boundaries within which an injury to one person gives another a right to recover[y]." Baldwin, 125 Vt. at 320, 215 A.2d at 494. Continuing to require a physical impact thus reflects "a policy consideration" that seeks to prevent the "flood of . . . claims [that] might result" otherwise. Sheltra v. Smith, 136 Vt. 472, 473, 392 A.2d 431, 432 (1978); accord Michaud, 1998 ME 213, ¶ 15 (describing risk of "limitless liability" absent physical-impact limitation); Ware ex rel. Ware v. ANW Special Educ. Co-op. No. 603, 180 P.3d 610, 618-19 (Kan. Ct. App. 2008) (noting "limitless exposure to liability" absent physical impact requirement (quoting Thing v. La Chusa, 771 P.2d 814, 821 (Cal. 1989)). While we often reject flood-of-litigation arguments, see, e.g., Richard v. Richard, 131 Vt. 98, 105, 300 A.2d 637, 641 (1973), we take such concerns seriously regarding NIED, see Sheltra, 136 Vt. at 473.

¶ 13.    Third, requiring a physical impact accounts for the difficulty in proving mental injuries, and thus lessens the risk of fraudulent claims. See Vincent, 2013 VT 34, ¶¶ 14-16 (noting difficulty of proving mental injuries). Mental injuries, due to their "uncertain" nature, are more "difficult to disprove" than physical ones. Savard v. Cody Chevrolet, Inc., 126 Vt. 405, 409, 234

7

A.2d 656, 659 (1967); Sheltra, 136 Vt. at 473, 392 A.2d at 432; accord Borden, Inc. v. Eskridge, 604 So. 2d 1071, 1073 (Miss. 1991) ("Many would deny compensability of mental . . . injuries . . . as they are difficult to prove." (quoting Fought v. Stuart C. Irby Co., 523 So. 2d 314, 317 (Miss. 1988))). Even today, the most respected diagnostic criteria for mental afflictions, such as the Diagnostic and Statistical Manual for Mental Disorders (DSM-5), are subjective. See Gunn v. Comm'r of Soc. Sec., No. 1:16-CV-05313-NLH, 2017 WL 4786558, at *5 (D.N.J. Oct. 24, 2017) (describing "criteria found in the DSM" as "a subjective . . . measure"); K. Allsop et al., Heterogeneity in Psychiatric Diagnostic Classification, 279 Psych. Rsch. 15, 15-16 (2019) (indicating subjectivity and overlap in DSM-5 criteria). Accordingly, "mental injuries often cannot be confirmed by objective findings." Pat Salmon & Sons, Inc. v. Pate, 307 S.W.3d 46, 50 (Ark. 2009).

¶ 14. Because of this inherently "subjective nature of . . . emotional injuries," their proof "lies wholly with[] the [person] who claims to have suffered," leaving little to prevent would-be plaintiffs in future cases from "opening the system to fraud" by "feigning and malingering" emotional injury. Vincent, 2013 VT 34, ¶ 15; Coleman v. Humane Soc'y of Memphis, No. W2012-02687-COA-R9-CV, 2014 WL 587010, at *11 (Tenn. Ct. App. Feb. 14, 2014); Borden, Inc., 604 So. 2d at 1073; see Gorcenski v. Home Selling Team, LLC, No. CV075001872S, 2007 WL 4754820, at *2 (Conn. Super. Ct. Dec. 20, 2007) ("Allowing recovery for emotional distress . . . risks . . . fraudulent claims."). Requiring proof of a concurrent physical impact "reduces the risk[] of fraud" by providing a more tangible, objective metric to judge the validity of a plaintiff's claim. Henry v. Dow Chem. Co., 701 N.W.2d 684, 690-91 (Mich. 2005); accord Pat Salmon & Sons, Inc., 307 S.W.3d at 50 ("[D]istinguishing between mental and physical injuries [limits the] . . . potential for fraudulent claims."); Nelson v. Metro-N. Commuter R.R., 235 F.3d 101, 109 (2d Cir. 2000) (noting that physical impact limitation helps "guarantee [the] genuineness and seriousness of the [plaintiff's] claim").

¶ 15.    Contrary to plaintiff's allegation, the physical-impact requirement under Vermont law is not rooted in pejorative views of mental illness. This Court has expressly "recognize[d a] need for compassion . . . towards those who suffer from mental health disabilities." In re Hirsch, 2014 VT 28, ¶ 10, 196 Vt. 170, 95 A.3d 412. Although some of our prior cases spoke of emotional harms outdatedly, see, e.g., Bovee v. Town of Danville, 53 Vt. 183, 190 (1880) (rejecting mother's claim for emotional distress damages as bearing "too much an element of sentiment"), the physical-impact requirement today reflects reasoned balancing, not a derision of mental illness. In support of these policies, we have denied recovery for emotional distress in even the most sympathetic circumstances. See, e.g., Guilmette v. Alexander, 128 Vt. 116, 119, 259 A.2d 12, 14 (1969) (denying recovery for emotional distress to parent who witnessed child hit by car because parent experienced no concurrent physical injury).

¶ 16.    Further supporting our decision to retain the physical-impact requirement, we note that while some courts have questioned or abandoned the physical-impact requirement, e.g., Williams v. Baker, 572 A.2d 1062, 1067-68 (D.C. Ct. App. 1990); Sacco v. High Country Indep. Press, Inc., 896 P.2d 411, 425-26 (Mont. 1995), the scope of cases that affirmed a physical-impact requirement remains widespread, see 4A S. M. Speiser et al., American Law of Torts § 16:12 (2023) (collecting cases by jurisdiction that have upheld physical-impact requirement for NIED claims). In fact, some states even continue to deny emotional-distress damages altogether for claims based on witnessing another's negligence. E.g., Stadler v. Cross, 295 N.W.2d 552, 553-54 (Minn. 1980); Kraszewski v. Baptist Med. Ctr. of Okla., Inc., 916 P.2d 241, 247 (Okla. 1996).

¶ 17.    Therefore, we decline to eliminate the physical-impact requirement in favor of adopting the "Negligence Plus" standard that plaintiff proffers. See Ferry, 2023 VT 4, ¶ 40; accord Nichols, 94 Vt. 14, 19 ("[M]ental anguish as an element of damages is not a new condition. It is as old as the common law itself, and the reasons underlying the doctrine [denying recovery for mental injuries absent concurrent physical harms] persist and will ever be with us.").

9

## B. NIED Exception

¶ 18. Plaintiff next asks us to recognize a new NIED exception applicable to her case, which would obviate the need for her to demonstrate a physical impact from external force. Recognized exceptions for NIED claims are limited to circumstances with "compelling evidence confirm[ing] the . . . validity of [the] claim[] of emotional distress." Vincent, 2013 VT 34, ¶¶ 15, 19. Compelling evidence arises in circumstances with "special relationships" or "undertakings" that are inherently "fraught with the risk of emotional harm. . . . [and] frequently involve an abuse of power or a position of . . . authority." Id.; Fitzgerald, 155 Vt. at 292 n.7, 583 A.2d. at 600 n.7. The two exceptions we presently recognize, the mishandling of bodily remains and the negligent transmission of a message announcing death, are "long established," and we have consistently declined to expand them. See Vincent, 2013 VT 34, ¶ 14.

¶ 19. Plaintiff presents several amorphous reasons for excepting her from the physical-impact requirement, including her witnessing a part of the accident and its aftermath, her status as a rescuer, the severity of her PTSD, the impact of her PTSD diagnosis on her, and her other emotional injuries. All but her status as a rescuer can be summarily dealt with. Witnessing a death, no matter how gruesome, and being diagnosed with mental illness, no matter how severe, bear no trace of a special relationship or undertaking. They involve no abuse of power or a position of authority, and they are not so inherently fraught with a risk of emotional distress in all circumstances to merit an exception from the physical impact requirement. See Vincent, 2013 VT 34, ¶¶ 12, 19, 25 (adopting narrow approach to NIED exceptions, declining to create new exception, and noting at least three prior cases in which we declined to create new exceptions applicable to NIED claims).

¶ 20. Whether acting as a rescuer creates an NIED exception is an issue of first impression. Generally, cases since Vincent have not clarified what circumstances are so "fraught with the risk of emotional harm" and "frequently involve an abuse of power or a position

10

of . . . authority" that they amount to a special relationship.  Id. ¶ 19.  In other areas of tort law, however, we define the term "special relationship" narrowly to include relationships that involve control or professional care over others, such as between a parent and child or a mental-health professional and patient.  See Montague v. Hundred Acre Homestead, LLC, 2019 VT 16, ¶ 16, 209 Vt. 514, 208 A.3d 609; Lenoci v. Leonard, 2011 VT 47, ¶ 15, 189 Vt. 641, 21 A.3d 694 (mem.).  Conversely, special relationships do not exist where this level of control is absent, such as between a town and its residents, a school district and its students, or among friends or intimate partners.  See Stopford v. Milton Town Sch. Dist., 2018 VT 120, ¶ 12, 209 Vt. 171, 202 A.3d 973; Lenoci, 2011 VT 47, ¶ 15; Hillerby v. Town of Colchester, 167 Vt. 270, 278, 706 A.2d 446, 450 (1997) (Dooley, J., dissenting).

¶ 21.  Jurisdictions that have contemplated an NIED rescuer exception similarly distinguish between an act of rescue and the special relationship or undertaking needed to create an NIED exception.  In Michaud v. Great Northern Nekoosa Inc., for example, a diving instructor was diagnosed with PTSD after trying and failing to rescue two trapped divers and sued for NIED.  Despite lauding his "heroic and selfless acts," the Maine Supreme Judicial Court rejected his claim and made clear that "a special exception for a rescuer in . . . a claim for emotional distress would expand liability out of proportion."  1998 ME 213, ¶ 20.  Similarly, in Baldonado v. El Paso Natural Gas, volunteer firefighters brought an NIED claim for mental and emotional harms that they suffered after responding to a natural-gas explosion.  2008-NMCA-010, ¶ 3, 176 P.3d 286, aff'd 2008-NMSC-005, 176 P.3d 277.  The New Mexico Court of Appeals, however, declined to broaden NIED exceptions to include rescuers, "reject[ing p]laintiffs' attempt to expand the scope of . . . negligent infliction of emotional distress."  Id. ¶ 1; see Gillman v. Burlington N. R.R. Co., 878 F.2d 1020, 1025 (7th Cir. 1989) (rejecting NIED claim where plaintiff failed to rescue coworker killed by train but suffered no physical impact); In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on April 20, 2010, 452 F. Supp. 3d 455, 462 (E.D. La. 2020) (rejecting

11

NIED claim where plaintiffs unsuccessfully attempted to rescue persons injured in oil rig explosion but suffered no physical impact).

¶ 22. We hold, accordingly, that the relationship between a rescuer and the person in danger is distinguishable from the special relationship or undertaking needed for an NIED exception. A rescuer lacks any sense of control or professional care over the person being rescued. See Vincent, 2013 VT 34, ¶ 19; cf. Montague, 2019 VT 16, ¶ 16 (narrowly defining high level of control necessary to create special relationship); Hillerby, 167 Vt. at 278, 706 A.2d at 450 (Dooley, J., dissenting) (same). Moreover, undertaking a rescue is an act of selflessness that involves no semblance of a position of power or an abuse of authority. See Vincent, 2013 VT 34, ¶ 19. While undertaking a rescue may risk emotional harm to the rescuer, acts of rescue are not so inherently fraught with a risk of emotional harm that they merit a new NIED exception applicable to such cases. See id.; accord Michaud, 1998 ME 213, ¶ 20; Baldonado, 2008-NMCA-010, ¶ 3.

¶ 23. Here, because we decline to create a new exception to the physical-impact requirement for rescuers, we need not determine whether plaintiff was, as she claims, legally a rescuer, or, as defendants claim, a witness who inserted herself voluntarily into the scene. Cf. 12 V.S.A. § 519 (compelling rescue when "another is exposed to grave physical harm . . . to the extent that the same can be rendered without danger or peril to [one]self"). Either way, no facts demonstrate that a recognized NIED exception applies.

Therefore, following our reasoning in Vincent, we decline to adopt a new NIED exception and determine that no applicable NIED exception permits this claim to proceed without the necessity of a physical impact. See Vincent, 2013 VT 34, ¶¶ 14, 19; accord Nationwide Mut. Fire Ins. Co. v. Lajoie, 163 Vt. 619, 620, 661 A.2d 85, 86 (1995) (describing NIED claim without physical injury or applicable exception as "beyond the boundaries of established torts").

12

## C.  Application of Physical-Impact Requirement

¶ 24.   Plaintiff next claims, in the alternative, that her contact with the flagger's blood and brain matter is sufficient to demonstrate a physical impact from an external force.  Originally, this Court upheld a "physical injury" requirement for NIED claims.  See Nichols, 94 Vt. at 18; Savard, 126 Vt. at 407, 235 A.2d at 658; Vaillancourt v. Med. Ctr. Hosp. of Vt., Inc., 139 Vt. 138, 143, 425 A.2d 92, 95 (1980).  Later, however, we implicitly lessened it to a "physical impact" standard but supplemented it with the requirement that the physical impact must derive from an "external force."  Brueckner, 169 Vt. at 125, 730 A.2d at 1092.  The dissent reads Brueckner differently.  It claims we should again broaden the physical-impact standard to include nearly any contact, supra ¶ 44, and in so doing, fails to recognize that Brueckner had already broadened the standard.  The dissent stretches the concept of external force under the circumstances presented here.

¶ 25.   Our prior cases have recognized a physical impact from external force when there was a direct application of force by a third party.  For example, in Brueckner, we held that a physical impact existed where a person ran into the plaintiff with a skateboard.  169 Vt. at 125, 730 A.2d at 1092; accord Vaughan v. Vt. Law Sch., Inc., No. 2:10-CV-276, 2011 WL 1085659, at *2 (D. Vt. Mar. 23, 2011) (finding person's application of force in committing alleged sexual assault was physical impact from external force); MacLeod v. Town of Brattleboro, No. 5:10-CV-286, 2012 WL 5949787, at *11 (D. Vt. Nov. 28, 2012), aff'd, 548 F. App'x 6 (2d Cir. 2013) (holding that police officer's use of taser was physical impact from external force).  By contrast, we have declined to hold that more attenuated contacts, removed from direct action by third parties, amount to a physical impact, such as a pet's ingestion of negligently prescribed medicine.  Goodby v. Vetpharm, Inc., 2009 VT 52, ¶ 12, 186 Vt. 63, 974 A.2d 1269; accord Lawyer v. Cota, No. 1:16-CV-62-JGM, 2017 WL 2572372, at *7 (D. Vt. June 14, 2017), aff'd, 764 F. App'x 65 (2d Cir. 2019) (holding that false arrest was not physical impact from external force).

¶ 26.    Although analogous applications of physical-impact requirements under other jurisdictions' NIED standards are often broad, many courts, as we do, similarly limit physical impacts to those from external or outside forces.  Specific to contact with blood and brain matter, other jurisdictions decline to find a physical impact without some external force or injury or, at least, concern that the contact could result in exposure to serious disease.  In Marchica v. Long Island R.R. Co., for example, the Second Circuit found a physical impact was present where the plaintiff contacted blood via an accidental stabbing from a needle.  31 F.3d 1197, 1202-03 (2d Cir. 1994), cert. denied 513 U.S. 1079 (1995); see Howard v. Alexandria Hosp., 429 S.E.2d 22, 24-25 (Va. 1993) (finding contact with blood via insertion of breathing tube into plaintiff was physical impact that could sustain NIED claim).  By contrast, in Binns v. Fredendall, the Ohio Court of Appeals determined that a plaintiff's "physical injuries" did not include her mere contact with "blood . . . [and] brain matter [that] spilled" on her lap and shirt.  No. 85AP-259, 1986 WL 4939, at *1 (Ohio Ct. App. Apr. 22, 1986), aff'd as modified, 513 N.E.2d 278 (Ohio 1987).  Similarly, in Barret v. Danbury Hospital, the Connecticut Supreme Court declined to hold that a patient's contact with blood lying inert on a stretcher, absent proof of exposure to serious infectious disease, such as HIV, was a physical impact.  654 A.2d 748, 751, 757 (Conn. 1995).

¶ 27.    We clarify, consequently, that an "external force" must derive from some act that is apart from the plaintiff's own application of force.  See Brueckner, 169 Vt. at 125, 730 A.2d at 1092; see also Force, Black's Law Dictionary (11th ed. 2019) (defining force as "[p]ower, violence, or pressure directed against a person or thing"); Force, Merriam-Webster Dictionary Online,     https://www.merriam-webster.com/dictionary/force     [https://perma.cc/S6LH-CST5] (defining force as "compel[ling] by physical . . . means" and providing example of one person exacting force on another); accord S. Kumar, Newton's Laws of Motion and Friction 1 (2020) ("Forces do not exist in isolation . . . . Every force has an external agent . . . . That is, force has a specific, identifiable cause.").

14

¶ 28. Here, the only alleged fact that could be construed as a physical impact is plaintiff's act of walking through the flagger's blood and brain matter and having that material get onto her shoes and pants. As the trial court noted, however, it was she who created the impact, if there was one, by walking through the victim's blood and brain matter that was lying inert on the ground. No reasonable inference could permit us to classify this force as "external." In other words, stepping in the blood and brain matter was not a physical impact because there was no external force. Unlike in Brueckner, where the physical impact derived from a direct external force, being hit by a skateboarder, the instant case involves a far more attenuated one: the truck struck the flagger, the flagger's blood and brain matter was on the ground, plaintiff walked through it, and the blood and brain matter then got onto her shoes and pants. See 169 Vt. at 125, 730 A.2d at 1092, see also MacLeod, 2012 WL 5949787, at *11. This claimed impact is far more similar to the attenuated contact in Goodby, where a veterinarian negligently prescribed medicine, the plaintiff gave that negligently prescribed medicine to the pets, the pets consumed it, and the pets died from the effects of it. See 2009 VT 52, ¶¶ 12-13 (noting that "plaintiffs did not themselves suffer an actual physical impact from an external force" (quotations omitted)); see also Vaughan, 2011 WL 1085659, at *2.

¶ 29. Moreover, this matter is distinguishable from the line of cases in other jurisdictions, were we to follow them, that permit NIED based on contact with blood. Plaintiff alleged that her contacting blood and brain matter from the flagger caused her to fear for her own health and safety. This allegation, however, makes no specific claim that she feared exposure to serious infectious disease, such as HIV. Cf. Barret, 654 A.2d at 757 (rejecting NIED claim based on contact with blood alone absent evidence of fear of exposure to HIV). Therefore, as the trial court determined, plaintiff's allegation fails to create a material dispute of fact sufficient to permit her NIED claim to survive summary judgment.

15

¶ 30. Nevertheless, plaintiff relies on Stoddard v. Davidson to claim that any contact with bodily material is a physical impact from external force. 513 A.2d 419 (Pa. 1986). There, the plaintiff's car ran over a dead body, causing his car to "jostle" him while he drove, but the court emphasized that it was the jostling of the car, not the fact it struck a body, that was the physical impact. Id. at 422. Stoddard is thus inapplicable to the instant case. See id. Accordingly, plaintiff's case better aligns with the decision in Binns, where no physical impact existed based on contact with blood and brain matter alone. See 1986 WL 4939, at *1. There are no facts in the record, howsoever liberally construed in the light most favorable to plaintiff, to demonstrate that she experienced a physical impact from external force. Accord Jobin v. McQuillen, 158 Vt. 322, 328, 609 A.2d 990, 993 (1992) (rejecting plaintiff's NIED claim because "[p]laintiff ha[d] not alleged that she suffered physical harm").

¶ 31. Therefore, because plaintiff cannot satisfy the physical-impact requirement, she cannot as a matter of law make out a viable NIED claim. See Brueckner, 169 Vt. at 125, 730 A.2d at 1092; accord In re Montagne, 425 B.R. at 129 (affirming summary judgment on NIED claim because plaintiff provided "no evidence . . . that would support her emotional distress damages"). The trial court thus properly granted summary judgment to defendants on her NIED claim.

### III. Negligence Claim

¶ 32. The four elements of a prima facie negligence claim are well established: (1) "a legal duty owed by defendant to the plaintiff," (2) "a breach of that duty," (3) an "actual injury to the plaintiff," and (4) "a causal link between the breach and injury." Zukatis v. Perry, 165 Vt. 298, 301, 682 A.2d 964, 966 (1996); Ziniti v. New Eng. Cent. R.R., Inc., 2019 VT 9, ¶ 15, 209 Vt. 433, 207 A.3d 463. An "actual injury," for purposes of a personal injury negligence claim, most often equates to physical injuries. Baldwin, 125 Vt. at 319, 215 A.2d at 493 ("[N]egligence . . . figures almost exclusively in wrongs wherein the harm element manifests itself in physical hurt to the [plaintiff's] body.").

16

¶ 33. Plaintiff argues that her PTSD diagnosis satisfies the "actual injury" requirement of her negligence claim because of its accompanying physical symptoms.[6] Whether a PTSD diagnosis suffices as an "actual injury" is an issue of first impression, but plaintiff's case is not the first before us to consider the nature and consequences of a PTSD diagnosis. In cases involving the admissibility of PTSD diagnoses as evidence, we have recognized in passing that a PTSD diagnosis may accompany both "emotional and physical" manifestations. State v. Catsam, 148 Vt. 366, 368, 534 A.2d 184, 186 (1987). Nevertheless, our case law has uniformly classified PTSD as a "mental illness," In re Valentine, No. 2009-044, 2009 WL 4573912, at *1 (Vt. Nov. 18, 2009), a "mental state," State v. Ross, 152 Vt. 462, 466, 568 A.2d 335, 338 (1989), and a part of one's "psychological and emotional profile," id. at 473, 568 A.2d at 342 (Morse, J., dissenting).

¶ 34. Many courts that have precisely examined whether a PTSD diagnosis is a physical injury similarly conclude that PTSD is better classified as a mental or emotional harm, not a physical one. See, e.g., Carver v. Pub. Emps.' Ret. Sys. Of Miss., 306 So. 3d 694, 697 (Miss. 2020) ("PTSD is not a physical injury."); Aguilar v. United States, No. 1:16-CV-048, 2017 WL 6034652, at *3 (S.D. Tex. June 7, 2017) ("PTSD falls within a definition of mental anguish, not physical injury."); Boivin v. Somatex, Inc., 2022 ME 44, ¶ 13, 279 A.3d 393 (rejecting plaintiff's attempt to classify PTSD as "physical injury"). While some courts have intimated that PTSD is a "bodily injury" because it can encompass physical changes to the body, see Allen v. Bloomfield Hills School District, 760 N.W.2d 811, 812, 816 (2008), we find this reasoning unpersuasive. PTSD is a diagnosable psychiatric disorder. Bobian v. CSA Czech Airlines, 232 F. Supp. 2d 319, 326 (D.N.J. 2002), aff'd sub nom. Bobian v. Czech Airlines, 93 F. App'x 406, 408 (3d Cir. 2004); accord Diagnostic and Statistical Manual of Mental Disorders 271 (5th ed. 2022) (outlining

---

[6] Plaintiff makes no claim that her depression suffices as an actual injury. Even if she had raised the issue on appeal, our cases have long classified depression as a mental, not physical, affliction. See, e.g., Hathaway's Adm'r v. Nat'l Life Ins. Co., 48 Vt. 335, 338 (1875).

17

diagnostic criteria for PTSD as mental illness); <u>Posttraumatic Stress Disorder (PTSD)</u>, Stedman's Medical Dictionary (2014) (defining PTSD as result of "<u>psychological</u>[] trauma[]" that causes "<u>cognitive</u> dysfunctions" (emphasis added)).  To accept PTSD as a physical injury simply because it may result in physical changes to one's body would "break down entirely" the logical divide "between emotional and physical harms."  <u>Bobian</u>, 232 F. Supp. 2d at 326.  Breaking down this divide, in turn, would make it impossible to define what harms fall under NIED as opposed to negligence, rendering these torts indistinguishable and pointlessly duplicative.

¶ 35.    Given that PTSD is a mental or emotional harm, not a physical one, a PTSD diagnosis alone is insufficient to satisfy the "actual injury" requirement of a negligence claim. <u>Bobian</u>, 232 F. Supp. 2d at 326; see <u>Baldwin</u>, 125 Vt. at 319, 215 A.2d at 493 (defining actual injuries as physical harms, not emotional ones).  The closest we have alluded to the contrary is in <u>In re Bowen</u>, where we recognized that actual injuries could include both tangible economic harm and "stress and anxiety" caused by an attorney's legal misconduct.  2021 VT 7, ¶¶ 38-39, 214 Vt. 154, 252 A.3d 300.  However, we have never equated solely mental injuries, such as PTSD, with an actual injury.  Accordingly, an action for the recovery of damages based on mental or emotional harms like PTSD lies in NIED, not negligence, as the trial court recognized.  Compare <u>Baldwin</u>, 125 Vt. at 320-21 (defining element of damages in negligence claims), with <u>Brueckner</u>, 169 Vt. at 125, 730 A.2d at 1092 (restating element of damages in NIED claims).[7]

¶ 36.    Here, because plaintiff's sole alleged injury is a PTSD diagnosis, no facts in the record, even construed in her favor, demonstrate that she suffered an actual injury.  See <u>Bobian</u>, 232 F. Supp. 2d at 326; see also <u>Boivin</u>, 2022 ME 44, ¶¶ 8, 13 (affirming summary judgment on

[7] Plaintiff argues, in passing, that a failure to recognize PTSD as an actual injury is a failure to provide a remedy for "all injuries or wrongs, which one may receive in person, property or character."  Vt. Const. ch. 1, art. 4.  We decline to address this argument because "[w]e will not consider issues, even those of a constitutional nature, that are insufficiently raised and inadequately briefed" on appeal.  <u>State v. Bergquist</u>, 2019 VT 17, ¶ 64 n.13, 210 Vt. 102, 211 A.3d 946.

NIED claim that was "based only on the bare assertion that PTSD is a physical disorder"). In the absence of any actual injury, plaintiff cannot make out a prima facie case of negligence. See Zukatis, 165 Vt. at 301 (requiring "actual injury" for prima facie negligence claims); Ziniti, 2019 VT 9, ¶ 34 (same); Baldwin, 125 Vt. at 319 (same). Therefore, the trial court appropriately granted summary judgment to defendants on her negligence claim.[8]

¶ 37. Because plaintiff's NIED and negligence claims both fail as a matter of law, defendants were entitled to summary judgment on both claims. See Carr, 168 Vt. at 466. Because husband's loss of consortium claim is derivative, and thus dependent upon the success of plaintiff's negligence or NIED claims, defendants were entitled to summary judgment on that claim as well. See Derosia v. Book Press, Inc., 148 Vt. 217, 220, 531 A.2d 905, 907 (1987) (noting that loss of consortium is "derivative" and thus "dependent upon the success of the underlying tort claim[s]").

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 38. **REIBER, C.J., dissenting.** The majority holds that plaintiff's contact with the victim's blood and brain matter is insufficient to satisfy our "physical impact" requirement for negligent infliction of emotional distress (NIED) because the contact was initiated by plaintiff rather than defendant. But while plaintiff initiated the immediate contact, both the contact and her

_____

[8] Plaintiff questions, in her reply brief, whether defendants owed her a duty. Generally, "[a]rguments raised for the first time in a reply brief need not be considered" on appeal. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 2 n.2, 176 Vt. 356, 848 A.2d 310. Moreover, it is "unnecessary for us to reach the other elements" of a prima facie negligence claim once we determine, as we do here, that one element fails as matter of law. Langle v. Kurkul, 146 Vt. 513, 517, 510 A.2d 1301, 1304 (1986). Thus, we need not consider whether plaintiff could prove a duty because she cannot prove an actual injury. See id.

alleged injuries were the proximate and foreseeable consequences of defendant's negligence. Because I would hold that plaintiff has adequately alleged a claim for negligent infliction of emotional distress, I respectfully dissent.

¶ 39.    We set out the standard for NIED claims in Brueckner v. Norwich University, stating that "[t]he prerequisites for establishing a claim differ according to whether plaintiff suffered a physical impact from an external force." 169 Vt. 118, 125, 730 A.2d 1086, 1092 (1999). Where there has been such an impact, the "plaintiff may recover for emotional distress stemming from the incident during which the impact occurred." Id. Thus, the physical-impact rule operates as a threshold test, requiring a plaintiff to demonstrate (1) that they suffered a physical impact and (2) that the impact was from an external force.

¶ 40.    There is no doubt that plaintiff suffered a physical impact here. While we have not previously expounded on the amount of physical contact necessary to satisfy this requirement, other courts have made clear that any amount of physical contact is sufficient. For example, the U.S. Supreme Court described the test as requiring "a plaintiff . . . [to] have contemporaneously sustained a physical impact (no matter how slight) or injury due to the defendant's conduct." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 547 (1994) (emphasis added). Other courts have described the physical-impact requirement as "any degree of physical impact, however slight," Zelinsky v. Chimics, 175 A.2d 351, 354 (Pa. Super. Ct. 1961), "[c]ontact, however[] slight, trifling, or trivial," Deutsch v. Shein, 597 S.W.2d 141, 146 (Ky. 1980), overruled on other grounds by Osborne v. Keeney, 399 S.W.3d 1 (Ky. 2012), and contact with any "outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious." Willis v. Gami Golden Glades, LLC, 967 So. 2d 846, 850 (Fla. 2007) (quotation omitted).

¶ 41.    The contact here easily meets this threshold. As the court described it, following the accident, there was "brain matter and body parts and blood" on the ground, and the blood and

20

brain matter "got on the bottoms of [plaintiff's] shoes and some splattered on her pants as she walked." Direct physical contact with the blood and body parts of the victim is more than sufficient to satisfy the requirement under any of the tests articulated above. Indeed, courts have found far less significant contact to satisfy this requirement. See, e.g., Clark v. Choctawhatchee Elec. Coop., 107 So. 2d 609, 611 (Fla. 1958) (electrical shock); Deutsch, 597 S.W.2d at 146 (x-rays); Porter v. Del. L & W. R. Co., 63 A. 860, 860 (N.J. 1906) (dust in the eye); Morton v. Stack, 170 N.E. 869, 869 (Ohio 1930) (inhalation of smoke).

¶ 42. Turning to the external-force requirement, I would find that plaintiff's physical contact with the victim's blood and brain matter meets the requirement because the contact was an immediate and foreseeable consequence of defendant's negligence. Defendant here ran over the victim, causing the victim's blood and brain matter to be expelled onto the pavement, and also causing plaintiff to rush to the victim's aid. In seeking to rescue the victim, plaintiff made direct physical contact with the victim's blood and brain matter. Thus, the "external force" here was defendant's operation of the truck, which caused plaintiff to make physical contact with the blood and brain matter.

¶ 43. The majority asserts that this type of contact does not qualify because it does not "derive from some act that is apart from the plaintiff's own application of force." Ante, ¶ 27. But plaintiff's contact does in fact derive from an act apart from plaintiff's own application of force: defendant's negligent driving. As Justice Cardozo famously wrote, "[t]he wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer." Wagner v. Int'l Ry. Co., 133 N.E. 437, 437 (N.Y. 1921). By negligently running over the victim, defendant created a situation that would foreseeably attract rescuers, while exposing those rescuers to potential physical and emotional injuries. See Eyrich for Eyrich v. Dam, 473 A.2d 539, 545 (N.J. Super. Ct. App. Div. 1984) (determining rescuer had valid claim for emotional distress because "where a danger has been negligently created . . . intervention of a rescuer is reasonably foreseeable"). Denying

21

recovery to plaintiff simply because she initiated the physical contact ignores the fact that it was defendant's negligence that ultimately caused both the contact and plaintiff's injuries.

¶ 44. The thrust of the majority's argument is that the external force must be the immediate, rather than the proximate, cause of the contact. But this distinction is not well founded, either in our case law or that of other states. Our NIED cases contain no such distinction; we have mentioned the external-force requirement only twice and have never decided a case on these grounds. See Brueckner, 169 Vt. at 125, 730 A.2d at 1092; see also Goodby v. Vetpharm, Inc., 2009 VT 52, ¶ 12, 186 Vt. 63, 974 A.2d 1269. Brueckner involved a defendant who ran into the plaintiff with a skateboard—a clear physical impact from an external force. 169 Vt. at 125, 730 A.2d at 1093. Goodby, by contrast, was decided under the zone-of-danger test because the plaintiffs clearly did not suffer a physical impact from their pet's ingestion of negligently prescribed medicine. 2009 VT 52, ¶ 12. Our modern cases thus do not establish the distinction between types of physical impacts that the majority draws here. And while the majority correctly notes that our pre-Brueckner precedents required a physical injury rather than a mere impact, these cases do nothing to elucidate the meaning of "external force."

¶ 45. Given the dearth of precedent dealing with this question, I would look to cases from other state courts considering this issue. Of greatest relevance is Florida law, from which we derived the "external force" language. See Brueckner, 169 Vt. at 125, 730 A.2d at 1092 (quoting Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd., 792 F. Supp. 1566, 1576 (S.D. Fla. 1992)). As the Florida Supreme Court has explained, "[t]he essence of impact . . . is that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body." Willis, 967 So. 2d at 850 (quoting Zell v. Meek, 665 So. 2d 1048, 1050 n.1 (Fla. 1995)). The touchstone is thus contact with an outside force or substance, not contact initiated by an outside force. Because plaintiff here made contact with the victim's blood and brain matter—an outside substance—the

22

physical-impact requirement would be met under Florida law. See Eagle-Picher Indus., Inc. v. Cox, 481 So. 2d 517, 526 (Fla. Dist. Ct. App. 1985) (permitting NIED claim based on inhalation of asbestos fibers). If plaintiff's claim would be permitted in the same state from which we took the external-force requirement, it can hardly be said, as the majority does, that permitting plaintiff's claim here would "stretch[] the concept of external force." Supra, ¶ 24. And respectfully, given that the Florida Supreme Court announced this understanding of the external-force requirement in 1995—four years before we decided Brueckner—permitting plaintiff's claim here would not be the expansion of Brueckner that the majority claims it would. See Zell, 665 So. 2d at 1050 n.1.

¶ 46. Numerous other state courts have also found the NIED physical-impact requirement to be met in circumstances where the impact was directly initiated by the plaintiff, but was proximately caused by the tortfeasor's negligence. For example, in Stoddard v. Davidson, a Pennsylvania court found that the physical-impact requirement was satisfied where plaintiff was jostled in his car by running over the body of a pedestrian who the defendant had struck and left in the road. 513 A.2d 419, 421-22 (Pa. Super. Ct. 1986). While defendant made no physical contact with plaintiff, his actions caused the physical impact ultimately initiated by plaintiff, and plaintiff therefore satisfied the physical-impact requirement. Id.

¶ 47. Similarly, in Conder v. Wood, the Indiana Supreme Court considered whether a plaintiff who witnessed a coworker being run over by a truck, and who banged on the side of the truck to try to stop it, had suffered a sufficient physical impact to satisfy the requirement. 716 N.E.2d 432 (Ind. 1999). Applying Indiana's "modified impact rule," the court determined that the physical-impact requirement is met "so long as that impact arises from the plaintiff's direct involvement in the tortfeasor's negligent conduct." Id. at 435. By pounding on the panels of the truck in an attempt to prevent defendant's negligent act, plaintiff satisfied the requirement. Id. Other cases have similarly permitted NIED claims where a plaintiff unknowingly stabbed himself with a hidden hypodermic needle, Marchica v. Long Island R.R., 31 F.3d 1197, 1204 (2d Cir.

1994), or unknowingly ingested food containing a worm, Holloway v. Bob Evans Farms, Inc., 695 N.E.2d 991, 996 (Ind. 1998). In all of these cases, it was the plaintiff's actions that initiated the contact, yet the courts determined that the physical-impact requirement was met because the defendant's negligence was the proximate cause of the contact.

¶ 48. While these states may apply slightly different versions of the physical-impact rule, their decisions are instructive because they are all premised on a recognition that permitting claims involving physical contact proximately caused by the defendant's negligence would be consistent with the goals of NIED law. See Camper v. Minor, 915 S.W.2d 437, 440 (Tenn. 1996) (explaining that "the law of negligent infliction of emotional distress, however it is formulated in a specific jurisdiction, is fundamentally concerned with striking a balance" between the opposing objectives of "compensating persons who have sustained emotional injuries attributable to the wrongful conduct of others[] and . . . avoiding the trivial or fraudulent claims that have been thought to be inevitable due to the subjective nature of these injuries").

¶ 49. In my view, the majority imposes too strict a reading of the physical-impact rule. I would find the requirement to be met where, as here, the plaintiff has suffered a physical impact as a proximate result of the defendant's negligence. Taking plaintiff's allegations as true, she has suffered both a physical impact and a serious injury as a result of defendant's negligence. I would therefore allow a jury to determine whether her claims are meritorious. See Zelinsky, 175 A.2d at 354 ("[W]here it is definitely established that [mental or emotional] injury and suffering were proximately caused by an act of negligence, and any degree of physical impact, however slight, can be shown . . . recovery for such injuries and suffering is a matter for the jury's determination."). Respectfully, I dissent.

_____
Chief Justice

24